[Crim. No. 2324. In Bank.—January 19, 1921.]

## In the Matter of FRANK NOWAK on a Writ of Habeas Corpus.

[1] MUNICIPAL CORPORATIONS—LOS ANGELES—AMENDMENT OF CHARTER — MUNICIPAL AFFAIRS — LIMITATION OF POWERS.—The charter of the city of Los Angeles, in view of the amendment of 1917, subdivision 51 of section 2 of article I, adopted pursuant to section 6 of article XI of the constitution, as amended in 1914, authorizing the city to exercise all powers in municipal affairs, subject only to the limitations of the charter, is, as to municipal affairs, in effect a limitation of powers instead a grant of power.

[2] ID.—IMPOSITION OF OCCUPATIONAL LICENSE TAX—POWER OF CITY
OF LOS ANGELES—CHARTER.—The city of Los Angeles, under
section 2 of article I of its charter empowering it to license and
regulate under general and uniform laws any lawful business or
calling, has the power to impose an occupational license tax for
revenue purposes only, in view of the decisions of the supreme
court prior to the incorporation of the words "license and regulate"
in the charter holding that a grant by the legislature of authority
to a municipality to license and regulate, includes authority to
impose a license for revenue purposes only.

[3] ID.—JUDICIAL INTERPRETATION OF WORDS "LICENSE AND REGULATE"
—SUBSEQUENT AMENDMENT OF CHARTER—PRESUMPTION.—Where
the people of the city of Los Angeles and the legislature in
amending the city's charter used the words "license and regulate"
in defining the power of the city over lawful businesses and
occupations, after the supreme court had given such words a
precise and technical meaning, the presumption is almost irresistible
that the words were used in such precise and technical sense.

[4] ID.—LICENSE AND REGULATION UNDER GENERAL AND UNIFORM
LAWS—CHARTER NOT SUBORDINATED TO STATE-WIDE LAWS.—Section
2 of article I of the charter of the city of Los Angeles, em-
powering the city to license and regulate "under general and
uniform laws" any lawful business or calling, does not by the use
of the words "general and uniform laws" render the charter sub-
ordinate to the general laws of the state which prohibit the im-
position of license taxes for revenue purposes, since such words
refer not to state-wide laws, but to the enactment of laws or
ordinances by the legislative body of the city.

[5] OCCUPATIONAL LICENSE TAX — IMPRISONMENT — CONSTITUTIONAL
LAW.—An occupational license tax ordinance in providing that the
act of doing business without the payment of the tax shall be a
crime and punishable as such does not violate the constitutional
right of immunity from imprisonment for debt in a civil action.

[6] ID.—CLASSIFICATION BY AMOUNT—LACK OF DISCRIMINATION.—An
ordinance imposing an occupational license tax is not subject to the
objection that it operates unequally by reason of the fact that it
adopts a method of gradation based upon gross receipts, such that
the business whose gross receipts are just within the maximum
amount for a given class enjoys an exemption practically equal to
the difference between the maximum and minimum amounts, while
no such exemption is enjoyed by the business whose gross receipts
are just above the minimum amount for the given class.

6. Right to grade license tax according to volume of business or
amount of capital employed, notes, 2 Ann. Cas. 325; 15 Ann. Cas. 986;
17 L. R. A. (N. S.) 898; 49 L. R. A. (N. S.) 954.

[7] ID.—DISCRIMINATORY ORDINANCE—RIGHT OF COMPLAINT.—A person not within the class whose constitutional rights are invaded by an alleged discrimination cannot complain.

PROCEEDING in Habeas Corpus to secure the release of petitioner for violation of occupational tax ordinance. Writ discharged.

The facts are stated in the opinion of the court.

Henry N. James, J. P. Chandler, Paul H. McPherrin and Rex Hardy for Petitioner.

Erwin W. Widney, City Prosecutor, J. D. Taggart, Deputy City Prosecutor, Charles S. Burnell, City Attorney, Wm. P. Mealey, Assistant City Attorney, and Julius V. Patrosso, Deputy City Attorney, for Respondent.

LENNON, J.—Petitioner was arrested for the commission of an alleged misdemeanor, namely, the violation of an ordinance of the city of Los Angeles, No. 39,600 (new series). This ordinance is a rather complex piece of municipal legislation, the numerous sections or subdivisions of which attempt an elaborate classification of various businesses or callings as a basis for the imposition of an occupation tax, differing in amount in the case of different businesses. The precise offense charged against petitioner consisted in conducting, managing and carrying on the business of a retail grocer in the city of Los Angeles without paying the tax upon said business prescribed by the ordinance. Retail grocers are not specifically mentioned in any provisions of the ordinance and they are, therefore, governed by the provisions of section 153 of the ordinance. This section contains an *omnibus* provision imposing upon "every person, firm or corporation, conducting, managing or carrying on any business, whether as a merchant, manufacturer or otherwise, not otherwise specifically licensed by other sections of this ordinance, the gross annual receipts of which business amount to less than six thousand dollars ($6,000)," a tax of $1.50 per quarter of a year, and thereafter sets forth a graduated scale indicating the amount of license tax to be paid upon businesses whose gross annual receipts amount to sums falling within the classes therein specified. Petitioner's gross receipts during 1919

were thirty thousand dollars. He failed to pay the license tax provided by the ordinance for the quarter commencing July 1, 1920, and terminating September 30, 1920, and has been arrested pursuant to a provision of the ordinance making the conduct of a business without paying the required license tax a misdemeanor. Petitioner claims that the ordinance in question, or at least so much of it as is applied against him, is null and void.

[1] It is contended, first, that inasmuch as the sole purpose of the ordinance is to raise revenue, its enactment is not authorized by the charter of the city of Los Angeles. In their argument the parties overlooked a certain provision of the charter of which mention should be made. By 1914 amendment to section 6 of article XI of the constitution of California a new scheme for city charters was adopted, in that it was provided that "cities and towns hereafter organized under charters framed and adopted by authority of this constitution are hereby empowered, and cities and towns heretofore organized by authority of this constitution may amend their charters . . . so as to become likewise empowered hereunder, to make and enforce all laws and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters, and in respect to other matters they shall be subject to and controlled by general laws." In 1917 the city of Los Angeles adopted an amendment to the city charter, subdivision 51 of section 2 of article I, by which the city is authorized to exercise all powers in municipal affairs, subject only to the limitations of the charter, which was strictly in accordance with the language and the purpose of the constitutional amendment. The question of the effect of a similar amendment to the charter in 1913, prior to the constitutional amendment above mentioned, need not be considered in this case. The net result of this situation is that, as to municipal affairs, the charter, instead of being a grant of power, is, in effect, a limitation of powers, and, the imposition of the tax for revenue purposes being strictly a municipal affair, the city has the power to impose that tax unless the power was taken from it by the charter itself. (*Civic Center Assn.* v. *Railroad Com.,* 175 Cal. 441, [166 Pac. 351]; *Cole* v. *City of Los Angeles,* 180 Cal. 617, [182 Pac. 436]; *Hayes* v. *Handley,* 182 Cal. 273, [187 Pac. 952].)

[2]   Section 2 of article I of the charter of the city of Los Angeles, relating to the enforcement of the ordinances of that city, reads as follows: ''The city of Los Angeles, in addition to any other powers now held by and that may hereafter be granted to it under the constitution, or laws of the state, shall have the right and power . . . (21) To license and regulate under general and uniform laws, any lawful business or calling; to fix the amount of license tax thereon, and to prescribe the manner of enforcing the same.'' Petitioner insists that the use of the term ''license and regulate,'' in defining the power of the city over lawful businesses and occupations, restricts the municipality to the imposition of license taxes for purposes of regulation only, and we are indebted to counsel for a learned and comprehensive analysis of authorities from other jurisdictions in support of this proposition.   However persuasive we might find the reasoning of the cases and texts thus called to our attention, had the language in question never received interpretation in this state, we are now bound by previous decisions wherein a grant by the legislature of authority to ''license and regulate'' has been held to include authority to impose a license tax for revenue only.   (*Ex parte Frank,* 52 Cal. 606, [28 Am. Rep. 642]; *San Jose* v. *San Jose R. R. Co.,* 53 Cal. 475; *Ex parte Braun,* 141 Cal. 204, [74 Pac. 780].)   Assuming, apparently, that these decisions have no effect other than as mere precedents, petitioner argues that they were based upon erroneous reasoning and should now be overruled.   We are unable to follow petitioner in this argument.   The question is not whether or not, as a matter of logic and policy, the words ''license and regulate'' appearing in a grant of power to a municipality should, as an original proposition, be held to include authority to impose a license tax for revenue purposes only.   The question is, What, as a matter of fact, was the intent of the people and of the legislature when, in amending the city charter in 1913, a time subsequent to the decisions above cited, they again incorporated in the charter the words ''license and regulate'' in defining the power of the city over lawful businesses and occupations?   Whether correct or incorrect as to reasoning, the decisions of this court had given to the words ''license and regulate,'' as used in this connection, a precise and technical meaning.   [3]   When, therefore, at a subsequent time, the people and the legislature undertook

to use these exact words in this particular connection, the presumption is almost irresistible that they used them in the precise and technical sense which had been placed upon them by this court. (*Harris* .v. *Reynolds*, 13 Cal. 514, [73 Am. Dec. 600] ; *Dalton* v. *Lelande*, 22 Cal. App. 481, [135 Pac. 54] ; *Robert* v. *Superior Court*, 38 Cal. App. 199, [175 Pac. 800].)

The question being one of intent, this presumption is, of course, not irrebuttable, and it is possible to conceive of circumstances which would suffice to indicate that the words "license and regulate" were used in a sense other than that which has been accorded to them by this court. No such circumstance or combination of circumstances has been called to our attention by petitioner. It is, indeed, contended that the fact that the legislature amended the general laws in 1901 so as to forbid municipalities not operating under freeholders' charters to impose license taxes for the purpose of revenue only indicates a change of policy which should be reflected in a change in the construction of the expression to "license and regulate." This argument obviously has no weight when applied to the interpretation of freeholders' charters, and, moreover, this court has re-enunciated its former interpretation of the words in question in *Ex parte Braun*, *supra*, a case decided subsequent to the amendment of the general laws.

Petitioner makes several additional arguments based upon the provisions of the charter. In this behalf, our attention is directed to the fact that no limit is placed upon the amount of the license tax authorized. In the light of the legislative policy to jealously safeguard all exercise of the taxing power, a policy exemplified in the charter itself by a limitation upon the amount of the tax which may be levied and collected upon real and personal property, it is argued that this failure to place a limit upon the license tax authorized by the charter indicates that it was intended to restrict the power to impose the said license tax so as to prevent its use for revenue purposes. The very fact, however, that an inflexible limit is placed upon the amount of revenue which may be raised by real and personal property taxes lends force to respondent's suggestion that some other source of revenue must have been contemplated by the people. Moreover, the charter provides that the law imposing the license tax shall be general and uniform in its operation and that no discrimination

in the amount of the tax shall be made between persons engaged in the same business otherwise than in proportioning the tax to the amount of business done.   In view of this safeguard, we cannot say that there is such danger of uncontrolled legislation upon the subject as to reasonably require a construction limiting the effect of this portion of the charter as contended by petitioner.

Petitioner next relies upon certain principles of statutory construction, namely, that the express inclusion of one thing is tantamount to the exclusion of another, and that the meaning of a word may be ascertained by reference to the meaning of words associated with it.   It is insisted that the application of these maxims requires that subdivision 21 of section 2 of article I of the charter be interpreted as a restriction to the power to regulate, for the reason that the latter portion of the subdivision refers expressly to the regulation and suppression of certain occupations which are in themselves noisome or unhealthful.   We do not think that these maxims are to be so applied.   Indeed, the very fact that the opening provisions of the subdivision refer to all lawful businesses and callings and use words well recognized as expressing an authorization to tax for revenue purposes, while the closing provisions refer to businesses noisome or unhealthful in themselves and contain words apt to authorize control and prohibition, indicates clearly that the subdivision deals with two separate and distinct matters, namely, the taxation of all lawful businesses and the police control of all noisome or unhealthful businesses.   Neither provision can be construed to exclude or absorb the other.

[4]   Upon this phase of the case petitioner finally contends that by the charter amendment of 1913 the power of the city to impose license taxes was subjected to the general laws of the state which, as we have already indicated, prohibit the imposition of license taxes for revenue purposes.   As it stood prior to 1913, the charter authorized the city "to license and regulate the carrying on of any and all professions, trades, callings and occupations. . . . "   As amended in 1913, the charter authorizes the city "to license and regulate, *under general and uniform laws,* any lawful business or calling. . . ." (Italics ours.)   Petitioner's contention in this behalf is that the words "general and uniform laws" as used in the charter amendment should be construed to read "general laws

of the state of California." We cannot so construe them without doing plain and obvious violence to the charter. The only basis for petitioner's contention that there was an intent to render the charter subordinate to state-wide laws on the subject is the use of the adjective "general," which is often used to describe state-wide laws. The significance of this fact is very slight, indeed, when we consider that the obvious purpose of the charter was to safeguard the exercise of the taxing power by forbidding discriminatory laws, and that in this connection the words "general" and "uniform," as applied to laws, have a well-defined and generally accepted meaning as antithetical to "special" or discriminatory laws. That the word "general" was used in this sense is further indicated by the use of the correlated adjective "uniform." The words "general and uniform laws" as used in the charter as amended would certainly be interpreted by the average person as referring, not to state-wide laws, but to the enactment of laws or ordinances by the legislative body of the city. We can see no good reason for adopting a different or more technical interpretation.

Our conclusion is that, not only does the charter not prohibit, but it expressly authorizes, the imposition of a tax upon petitioner's business for the purpose of raising revenue.

[5] Ordinance No. 39,600 (new series) provides that this tax may be recovered in a civil action as a debt. It also provides that the act of doing business without the payment of the tax shall be a crime and shall be punishable as such. For the commission of this crime petitioner has been imprisoned. This imprisonment does not violate his constitutional right not to be arrested for debt. Imprisonment for debt, as such imprisonment is defined in our constitutional guaranties, is necessarily imprisonment in a civil action for debt. As such imprisonment existed in the English common law, it was a provisional remedy strictly analogous to the present-day remedy of attachment of goods. It is against such attachments that the constitutional guaranties against imprisonment for debt are directed. They have no application whatever to imprisonment for crime, and legislative bodies are free to provide for punishment by imprisonment of offenders who commit acts denominated by the said legislative bodies as offenses against the public, provided, of course, that other constitu-

tional limitations are not violated. (*Rosenbloom* v. *State,* 64 Neb. 342, [57 L. R. A. 922, 89 N. W. 1053].)

We proceed, next, to a consideration of petitioner's contention that the ordinance is unlawfully discriminatory in its operation and effect and is in other respects unreasonable.

We need only mention, in passing, the contention that the ordinance is uncertain in that section 153 imposes a license tax upon all persons conducting, managing or carrying on any business, whether as a "merchant, manufacturer, or otherwise," without defining more specifically the business included. Petitioner has answered this objection himself. He concedes in his reply brief that, had the section referred to merchants and manufacturers only, it would have been sufficiently certain, while he demonstrates in his opening brief that such, in fact, is the precise interpretation which is to be placed upon the section.

[6] It is also objected that the ordinance operates unequally by reason of the fact that it adopts a method of gradation based upon gross receipts such that the business whose gross receipts are just within the maximum amount for a given class enjoys an exemption practically equal to the difference between the maximum and minimum amounts, while no such exemption is enjoyed by the business whose gross receipts are just above the minimum amount for the given class. This objection is but the expression of the effect of classification by amount, and has been frequently made before and been considered by the courts. Their judgment has been uniformly adverse to the contention of petitioner herein. (*Sacramento* v. *Crocker,* 16 Cal. 120; *Clark* v. *Titusville,* 184 U. S. 329, [46 L. Ed. 569, 22 Sup. Ct. Rep. 382, see, also, Rose's U. S. Notes]; *Magoun* v. *Illinois Trust etc. Bank,* 170 U. S. 283, [42 L. Ed. 1037, 18 Sup. Ct. Rep. 594]; *State* v. *Insurance Co.,* 40 La. Ann. 463, [4 South. 504].) We do not think it necessary to review the cases or enter into the reasoning upon which they were based further than to say that, while it is conceivable that a legislative body might undertake to classify by amount in a manner so arbitrary and unreasonable as to be confiscatory, no such case has, so far as we are aware, been presented to the courts. Certainly such a case is not presented herein.

[7] The remaining objections to the ordinance, based upon alleged discriminations therein, will not be considered, for the

reason that these claimed discriminations do not work any injustice upon petitioner or violate his rights. Admittedly, all persons engaged in the same business as that of petitioner, namely, that of retail grocer, are governed by the general provisions of section 153 of the ordinance, and the only distinction made by that section between such persons is to be found in the fact that the tax is proportioned to the amount of the business done. Petitioner is, therefore, confronted with the general rule that a person not within the class whose constitutional rights are invaded by an alleged discrimination cannot complain. (*Hatch* v. *Reardon,* 204 U. S. 152, 160, [9 Ann. Cas. 736, 51 L. Ed. 415, 27 Sup. Ct. Rep. 188, see, also, Rose's U. S. Notes]; *Jeffery Mfg. Co.* v. *Blagg,* 235 U. S. 571, [59 L. Ed. 364, 35 Sup. Ct. Rep. 167]; *Ex parte Quong Wo,* 161 Cal. 220, 233, [118 Pac. 714]; *Brown* v. *Los Angeles,* 183 Cal. 783, [192 Pac. 716].) Inasmuch as it has not been pointed out that there is, in the present case, any circumstance giving rise to a reason why this general rule should not be applied (see *Buchanan* v. *Warley,* 245 U. S. 60, [Ann. Cas. 1918A, 1201, L. R. A. 1918C, 210, 62 L. Ed. 149, 38 Sup. Ct. Rep. 16], and *Quong Ham Wah* v. *Industrial Acc. Com., ante,* p. 26, 12 A. L. R. 1190, 192 Pac. 1021), petitioner's objection in this behalf must be held not maintainable.

Petitioner has, consequently, no ground for complaint on account of his imprisonment because of his violation of the ordinance in question, and the writ is accordingly discharged.

Olney, J., Shaw, J., Wilbur, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.