THE STATE OF DELAWARE, upon the relation of James R. Morford, Attorney-General, v. WALTER G. TATNALL, JR., ALVIN SATTERTHWAITE, HARRY K. HOCH, THOMAS M. ADAMSON, WAYNE C. BREWER, THOMAS MUNCY KEITH, LEROY F. HAWKE, WILLIAM F. HAYES and J. FRANK DAVIS.

(*June* 17, 1941.)

HARRINGTON, Chancellor, LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*Stewart Lynch and Daniel L. Herrman* for Plaintiff in Error.

*William Poole and W. Reese Hitchens* for Defendants in Error.

Supreme Court, No. 8, June Term, 1940.

SPEAKMAN, J., delivering the opinion of the court:

Prior to 1897 there was no constitutional provision in this State relating to the registration of voters.

The Amended Constitution adopted on June 4 of that year provided by Section 4 of Article V thereof, that:

"The General Assembly shall provide by law for a uniform biennial registration of the names of all the voters in this state who possess the qualifications prescribed in this Article, * * *."

On March 2, 1925, the said Section 4 of Article V of the Constitution was amended so that the pertinent part thereof read as follows:

"The General Assembly shall enact uniform laws for the registration of voters in this State entitled to vote under this Article, * * *."

By the amendment, biennial registrations of voters were no longer required.

In compliance with the mandate in said Section 4 of

Article V of the Constitution as adopted in 1897, the General Assembly by an act approved May 27, 1898, established a uniform biennial system of registration of said qualified voters, Chap. 36, Vol. 21, and as amended Sec. 6 to 28 inc. and Sec. 38 (sections 1711 to 1733 and 1743) of Chap. 56, *Revised Code* 1935.

At the said session of 1898 the following auxiliary legislation was passed:

(a) An Act concerning the appointment of Registration Officers and the preparation and delivery of Registration Books Chap. 35, Vol. 21, and as amended Sec. 1 to 5 inc. (sections 1706 to 1710) of Chap. 56, *Revised Code,* 1935.

This act provided among other things that the Governor should appoint the registration officers in the State, outside of the City of Wilmington.

(b) An Act creating a Department of Elections for the City of Wilmington (Chap. 40, Vol. 21).

(c) An Act more clearly defining the duty of the said Department of Elections (Chap. 41, Vol. 21).

The two acts, last above, as amended and revised, now appear in the *Revised Code* of 1935 as Chapter 57 thereof, under the title "Department of Elections for the City of Wilmington."

It is the amendment to this chapter that is under attack. For convenience the amendment will hereafter be referred to as the "amendatory act."

The contention that the amendatory act violates Section 4 of Article V of the Constitution, because it constitutes special legislation for the registration of voters in one part of the State which is not uniform with the law for

the registration of voters in other parts of the State, will be first considered.

Attention is directed to the following, as constituting special legislation:

Under the amendatory act, the Legislature appoints the members of the Department of Elections for New Castle County, which Department of Elections is given power to:—

(a) Name registration officers for New Castle County.

(b) Fill vacancies occurring in the office of Registrar, Assistant Registrar or Alternate Registrar in New Castle County.

(c) Change the boundaries of the Election District in New Castle County outside of the City of Wilmington, and to provide for a new general registration in the election districts in which the boundaries have been changed. [This power is also given with respect to Wilmington.]

(d) Designate the places for registration in New Castle County, outside of the City of Wilmington. [This power is also given with respect to Wilmington.]

The above powers designated as (a) and (b) are now exercised by the Governor under Section 1 of Chapter 56 of the *Revised Code* of 1935, with respect to the other counties, and the powers designated as (c) and (d) have for many years past been exercised by the General Assembly with respect to the other counties, and prior to the approval of the amendatory act, with respect to New Castle County, outside of the City of Wilmington, by the passage of special acts.

For some unexplained reason the relator, on the ques-

tion of lack of uniformity, discusses the situation relating to New Castle County outside of the City of Wilmington, and the other counties. We are at a loss to understand why he has excluded the City of Wilmington. The amendatory act applies to the whole of New Castle County, and speaking generally, it adopts for the entire county provisions which theretofore applied only to the City of Wilmington. Prior to the passage of the amendatory act lack of uniformity, if any, existed between the City of Wilmington and the rest of the State; by the adoption of the amendatory act lack of uniformity, if any, now exists between New Castle County and the other counties.

The express command in the Constitution is that:

"The General Assembly shall enact uniform laws for the registration of voters in this State * * *."

To be uniform a law for the registration of electors must of necessity be general. "General" and "uniform" as applied to laws have a well defined and generally accepted meaning as antithetical to "special" or "discriminatory." In re Nowak, 184 Cal. 701, 195 P. 402.

A law is general and uniform if all persons in the same circumstances are treated alike.

*Arms v. Ayer,* 192 *Ill.* 601, 61 *N. E.* 851, 58 *L. R. A.* 277, 85 *Am. St. Rep.* 357; *Davis Coal Co. v. Polland,* 158 *Ind.* 607, 62 *N. E.* 492, 92 *Am. St. Rep.* 319; *Commonwealth ex rel. Carson v. Mathues,* 210 *Pa.* 372, 59 *A.* 961; *Winston v. Moore,* 244 *Pa.* 447, 91 *A.* 520, *L. R. A.* 1915*A,* 1190, *Ann. Cas.* 1915*C,* 498.

Registration, within the meaning of election laws, is a method of proof, prescribed for ascertaining the electors who are qualified to cast votes. 20 C. J. 57. "It is the act of making a list, or catalogue, or schedule, or

register. * * * and, when applied to voters, * * * it is any list, or register, or schedule containing names, the being on which lists, registers, or schedules constitutes a prerequisite to voting." In re Appointment of Supervisors of Election, in State of Delaware, (C. C.) 1 F. 1, 5. Registration refers to the idea of evidencing the existence of the things which constitute a voter, a recording of the fact that the individual in question possesses the designated qualifications of a voter. *McComb v. Robelen,* 13 *Del. Ch.* 157, 116 *A.* 745.

The present question involves (a) the appointment of registration officers; (b) changes in the boundaries of election districts, and (c) a new general registration in the election districts when the boundaries have been changed. We are unable to see how the appointment of registration officers, or changes, at proper times, in the boundaries of election districts, affect the rule that all members of the class upon whom an act purports to operate must be treated alike. The members of the class in question are, of course, the qualified voters of this State. Their treatment with respect to registering as qualified voters cannot be affected where lack of uniformity is in the preliminary arrangements for registration and not in the registration itself, nor can we see how, if all qualified electors are given an equal opportunity to register, any one of them would be in a position to say that his constitutional right to register had been violated.

It, of course, was not the intention of the framers of the provision amending the Constitution, or of those adopting it, to deprive the General Assembly of its power to legislate with respect to those matters which could not be included within the structure of a general and uniform law.

The laying out of election districts is an apt illustration of the necessity for divergent legislation in carrying out the provisions of such a law. No standard for this purpose could be devised which would result in uniformity. If area was adopted as the standard, the districts would vary materially in the number of resident electors, and undoubtedly in other respects.

By Section 5 of the amendatory act it is provided, in part, that:

"The Department of Elections shall, on or before the first day of June, in every year in which a General Registration is held, divide New Castle County, including the City of Wilmington, into as many election districts as they may deem necessary and shall establish the boundaries thereof. Each of said election districts shall be entirely within one representative district.

"On or before the first day of June, commencing with the year 1942 and biennially thereafter, the said Department of Elections may divide such election districts, and such only as, by the election last preceding such division, shall be found to contain a greater number of voters than can be conveniently voted therein. They shall designate each election district by appropriate titles or distinctions.

"When any boundary of any election district in New Castle County shall be changed as aforesaid, a new general registration shall be held in each election district affected by such change of boundary; * * *."

Under the first paragraph of this section the Department of Elections is charged with the duty of dividing New Castle County into election districts quadrennially, which, at the time fixed, would be in every year in which a general registration is held, and under the second paragraph of the section the Department is granted the authority to divide election districts biennially, which under the amendatory act would be the years in which general registrations or supplementary registrations are held.

Where the power to divide is exercised in a year in which a general registration is to be held, it cannot be said that uniformity in registration would be affected, as

the law provides for a general registration in that year in every election district throughout the State; which necessarily would include those districts unaffected, as well as those affected by a change in boundaries.

Whether the authority to divide election districts in a year in which a supplementary registration is held, and the provision for a new general registration in the districts affected by a change in boundaries as provided for in the second and third paragraphs of the section, constitutes special legislation for the registration of voters in one part of the State which is not uniform with the law for the registration of voters in other parts of the State, we are not at this time inclined to express any opinion. This is solely for the following reasons:

(a) The question was not considered by the court below.

(b) The question, in this court, was posed, but not argued.

(c) By an Act approved May 12, 1941, the General Assembly has amended Chapter 56 of the *Revised Code* of 1935, relating to the registration of voters. This amendment provides for a permanent registration of voters, and in connection therewith a Board of Registration for each county is created, with power to divide election districts in their respective counties. The amendment further provides for a new general registration without respect to counties, in those election districts affected by a change in boundaries.

(d) This is a quo warranto proceeding to try the titles of the respondents to the offices of members of the Department of Elections for New Castle County. The power granted to the Department to divide election dis-

tricts in a year in which a supplementary registration is to be held and the provision for a new general registration in that year in those districts affected by a change in boundaries are before us, not as abstract propositions, but for the sole purpose of determining whether in the event the power or the provision in question should be found to be unconstitutional, the General Assembly would have passed the amendatory act without their inclusion therein.

For the purpose of this case, it can be assumed that the General Assembly could not constitutionally grant the particular power or provide for the provision in question. The second and third paragraphs of said Section 5 deal exclusively with these provisions.

Even if these paragraphs should be unconstitutional, their invalidity would not invalidate the amendatory act, because their elimination would leave a complete statute that could be enforced. With these paragraphs omitted, the power to divide New Castle County into election districts and to establish the boundaries thereof quadrennially, as contained in the first paragraph of said Section 5, would remain, and the provisions of the general registration law (Chap. 56, *Revised Code,* 1935) would apply which provides by Section 6 thereof that:

"During the year 1932, and every four years thereafter there shall be a registration, known as a general registration, of all the qualified voters resident in each election district of this State."

The provisions of the second and third paragraphs of said Section 5 are not of such a character that it can be inferred that the General Assembly would not have passed the amendatory act with these paragraphs omitted.

The provisions of Section 5 of the amendatory act are

also attacked on another ground. It is contended that the said section contains an unlawful delegation of legislative power in violation of Section 1 of Article II of the Constitution, which vests the legislative power in the General Assembly.

The maxim that power conferred upon the legislature to make laws cannot be delegated to any other authority does not preclude the legislature from delegating any power not legislative which it may itself rightfully exercise. It may confer an authority in relation to the execution of a law which may involve discretion, but such authority must be exercised under and in pursuance of the law. The legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative officer or body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply. If this could not be done there would be infinite confusion in the laws, and in an effort to detail and to particularize, they would miss sufficiency both in provision and execution. Cooley's Const. Law, 8th Ed., 228.

The main purpose of the General Assembly in providing for the establishment of several election districts in the respective Representative Districts was to facilitate and make more convenient the casting of ballots by the qualified electors.

The relator contends that the General Assembly has not provided the Department of Elections with an adequate "yard-stick" for its guidance in the administration of the law. He suggests that the Department of Elections could divide a Representative District so that the voting population of one election district would be 500 and that of another 5000, and that such a division would meet the requirements

of the statute. With this suggestion we cannot agree. The statute requires the exercise of reasonable discretion by the Department of Elections in the establishment of election districts.

By the express terms of the statute it is the duty of the Department of Elections on or before June 1, in every year in which a general registration is held, to divide the Representative Districts in New Castle County into as many election districts as they may deem necessary, and on June 1, 1942, and biennially thereafter, to divide such election districts, and such only, as by the election last preceding such division, shall be found to contain a greater number of voters than can be conveniently voted therein.

The words "necessary" and "conveniently", as used in the statute, are the guides to be followed by the Department of Elections in the discharge of their duties. The word "necessary" is a word susceptible of various meanings. Its meaning must be construed in connection with what it is used. As an adjective it is defined in Webster's New International Dictionary as meaning "indispensable, requisite, essential", and this we believe to be the true meaning as used in the amendatory act. "Conveniently", on the other hand, has a common or ordinary meaning easily understood by all. It means "without trouble or difficulty." *American University v. Todd*, 9 *W. W. Harr.* (39 *Del.*) 449, 1 *A.* 2d 595, 597. By the use of these words, the General Assembly has not conferred unlimited power on the Department of Elections with respect to the laying out or establishment of election districts, or the division thereof, but rather a circumscribed power, to be exercised within the spirit of the law with reasonable discretion, and in accordance with the pertinent facts and circumstances.

It is next contended that the title of the amendatory act is contrary to the Constitutional requirement found in Section 16 of Article II of the Constitution, which provides that:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

The title of the amendatory act is "An Act To Amend Chapter 57 Of The Revised Code Of The State Of Delaware, 1935, Entitled 'Department Of Elections For The City Of Wilmington' By Providing For The Establishment Of A Department Of Elections For New Castle County."

Chapter 57 of the said Code, entitled as above stated, contains twenty-four sections. By the amendatory act twelve sections were repealed, and new sections passed in lieu thereof, twelve sections remained unaffected and five other sections were added.

By the amendment the Department of Elections of the City of Wilmington was abolished and the Department of Elections for New Castle County was created, and, generally speaking, the powers and duties of the old Department, with respect to the City of Wilmington, were enlarged so as to include all of New Castle County, and as enlarged the new Department was entrusted with such powers and charged with such duties.

It is well established that the title of a bill is not required to be an index of the details of the bill itself, or synopsis of the means by which the object of the bill is to be effectuated. It is sufficient if the title is so framed as to apprise those interested in the subject matter of legislation so as, reasonably, to lead to an inquiry into the body

of the bill. *State v. Emerson,* 1 *Terry* (40 *Del.*) 328, 10 *A.* 2*d* 515, affirmed, 1 *Terry* (40 *Del.*) 496, 14 *A. 2d* 378.

 We think the title of the bill is sufficient to fairly apprise the people of this State of the subject embraced in the bill.

And lastly, it is contended that the amendatory act is unconstitutional because it did not receive the requisite number of votes required for its passage, as provided by Section 1 of Article IX of the Constitution, which provides, in part, that:

"No general incorporation law, nor any special act of incorporation, shall be enacted without the concurrence of two-thirds of all the members elected to each House of the General Assembly."

The relator argues:

(a) That the legally constituted members of the Department of Elections for the City of Wilmington are corporate officers of the City of Wilmington.

(b) That on the final passage of the bill (Senate Bill No. 306) the vote in the Senate was 11 yeas and in the House 21 yeas, in each case less than two-thirds vote of all the members elected to each House of the General Assembly, that in each case the vote is shown by the respective journals of each House, and that the Court can take judicial notice thereof.

As hereinabove stated, upon the adoption of the Amended Constitution of 1897 the General Assembly passed (a) An Act creating a Department of Elections for the City of Wilmington (Chap. 40, Vol. 21), and (b) An Act more clearly defining the duty of the said Department of Elections (Chap. 41, Vol. 21).

The first of the above acts, which was approved on May 20, 1898, provides for a Department of Elections to consist of three members, whose salaries, office rent and other expenses were to be paid by the State. They were not specifically charged with any duties relating to municipal elections in the City of Wilmington. Their principal duties under the act were the division of the City of Wilmington into election districts and the appointment of registration officers.

The second act, which was approved on June 1, 1898, consists of two sections, which provide as follows:—

"Section 1. That the Department of Elections of the City of Wilmington shall have and exercise all the powers and privileges in respect to elections, which shall hereafter be held in said city, which the Department of Elections had and possessed by virtue of an act of the General Assembly, entitled 'An Act to provide for the Registration of Voters in the City of Wilmington,' passed at Dover, May 13, A. D. 1891, shall select election places in the respective districts, appoint all election officers with power to remove the same, and have all other powers and privileges exercised and possessed by said Department of Elections, in respect to elections under this act.

"Section 2. Nothing in this act shall be construed to repeal or impair any act or part of an act passed by the present session of the General Assembly."

The Act of May 13, 1891, referred to in Section 1 of the Act of June 1, 1898 (Chap. 41, Vol. 21), is Chapter 39, Volume 19 of our laws. From Section 1 thereof it appears that the object of the act was "for the purpose of preventing fraud at all elections held on the Tuesday next after the first Monday in the month of November, as provided by

Section 1 of Article 4 of the Constitution [of 1831 as amended in 1855.]"

Section 1 of Article IV of the Constitution of 1831, as amended January 30, 1855, provides that:

"All elections for Governor, Senators, Representatives, Sheriffs and Coroners shall be held on the Tuesday next after the first Monday in the month of November of the year in which they are to be held, and be by ballot."

By the Act of May 13, 1891 (Chap. 39, Vol. 19) a Department of Elections for the City of Wilmington was created. The members of the Department were to be appointed by the Governor, their salaries were to be paid by the State, and their expenses were to be paid as other general election expenses.

Section 1 of the Act, after providing for a general registration of electors qualified to vote at all elections held on the Tuesday next after the first Monday in the month of November, provided further:

"That for each and every election, other than such as above designated, except municipal elections and elections for members of the Board of Education, held in said city there shall be a revision of the general registration had as provided in this act, which revision shall be made on the second Saturday next preceding the day of each and every such election."

From the language of the acts (Chaps. 40 and 41, Vol. 21, and Chap. 39, Vol. 19) it is obvious that they applied solely to the general State elections and matters in preparation thereof and incidental thereto, and that they in no way had reference to municipal elections in the City of Wilmington, or elsewhere.

The three acts above referred to, as subsequently amended, are Chapter 57 of the *Revised Code* of 1935.

 From the above it is apparent that said Chapter 57 is in no sense a part of the Charter of the City of Wilmington, or a special act of incorporation of any sort, consequently the enactment of any pertinent amendment would in no way be controlled by Section 1 of Article IX of the Constitution. The bill therefore received the constitutional vote necessary for its passage in each of the Houses.

A similar view was taken by the court in Banc in the case of *State v. Lewis*, 7 *Penn.* 211, 78 *A.* 877. There the Department of Elections for the City of Wilmington, as established and created by Chapter 39, Vol. 19, and Chapter 40, Volume 21, Laws of Delaware, was amended by Chapter 70, Volume 22, Laws of Delaware, by enlarging the membership of the Department from three to five persons. The amendment was passed by each House by a majority vote only. After its passage, Jacob H. Lewis and Thomas A. D. Hutson were appointed as the additional members of the Department.

There the question was whether the said Jacob H. Lewis and Thomas A. D. Hutson, in participating in the transfer and registration of voters preparatory to holding a municipal election in the City of Wilmington, were assuming such authority and powers without legal right. The court held that the two defendants by virtue of the provisions of the laws of this State, and their appointment, and commission by the Governor, were members of the said Department of Elections, and as such they were entitled to use and exercise the office of members of said Department and the rights and duties of said office, among which

was the transfer and registration of voters preparatory to holding the municipal election in said city.

The court below in its opinion has questioned the soundness of the decision of the court in Banc in the Lewis case. We are quite sure that its attention was not directed to Chapters 727 and 729, Volume 19 of our laws, passed April 6, 1893 and April 13, 1893, respectively, each of which, from their enacting clauses, appear to have been passed with two-thirds of each branch of General Assembly concurring therein.

By Section 1 of said Chapter 727, Volume 19, an Act establishing a Department of Elections for the City of Wilmington, whose powers and duties were confined to municipal elections in said city (Chap. 194, Vol. 18, as amended by Chap. 669, Vol. 18), was repealed, and by Section 2 of said Chapter 727 it was provided:

"That from and after the passage of this act, at all elections held in the city of Wilmington, excepting elections for members, [of] 'The Board of Public Education in Wilmington,' the registration, election and canvass of the vote cast thereat shall in all respects be conducted in conformity with the provisions of the election and registration laws governing general elections in the city of Wilmington, except as in this act otherwise provided."

This exception has no pertinency in the instant case.

By Section 3 of the Act it is provided that:

"All duties imposed upon and all powers vested in the Department of Elections created by * * * [Chap. 194, Vol. 18], are hereby imposed upon and vested in the Department of Elections created by * * * [Chap. 39, Vol. 19.]"

By Chapter 729, Volume 19, above referred to, Chapter 39, Volume 19, was amended so as to make the regis-

trations of voters for the general elections available for use at municipal elections, other than elections for members of the Board of Education in the City of Wilmington.

However, the question of the jurisdiction of the Department created by the amendatory act over municipal elections in the City of Wilmington, and the registration used in connection therewith, is not now before us.

For the above reasons, the judgment of the court below will be affirmed.