**Evelyn W. BETTS, Plaintiff Below,**

**v.**

**James R. ZELLER, Director of Finance, Department of Finance, City of Wilmington, Maurice F. Williams, City Treasurer, City of Wilmington, and the City of Wilmington, a municipal corporation of the State of Delaware, Defendants Below.**

Supreme Court of Delaware.

Jan. 26, 1970.

William J. Alsentzer, Jr., Wilmington, for plaintiff below.

Clement C. Wood and Carl Goldstein, Asst. City Solicitors, Wilmington, for defendants below.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice.

This Court accepted certification [1] by the Court of Chancery of certain questions regarding the constitutionality of the

Earned Income Tax Code of Wilmington, enacted in June 1969. The certification arises in an action by which the plaintiff, a taxpayer having an income in excess of $6,000. per annum subject to the tax, seeks on behalf of herself and all others similarly situated to enjoin collection of the tax on constitutional grounds.

I.

The Code was enacted by the Mayor and Council of Wilmington under an Enabling Act (22 Del.C. Ch. 9, amended March 31, 1969) by which the General Assembly authorized any municipality of the State, with a population in excess of 50,000, to tax for general revenue purposes the total "earned income of its residents" from any source, and "any income earned within the city by persons not residing within such city." The Enabling Act limits the tax to one percent of such income per annum.

The Code imposes an annual tax on specified categories of earned income: (1) all compensation earned by residents of Wilmington; (2) all compensation earned by non-residents of Wilmington for work done or services rendered within the City; and (3) all net profits of businesses, professions, and "other activities" conducted by residents of the City anywhere, and by non-residents within the City.

The crux of the questions presented centers upon the tax rates specified by the Code upon such earned income:

"(1) if the same shall not exceed $4,000.00, there shall be no tax,

"(2) if the same shall be at least $4,000.01 but not more than $6,000.00, the tax shall be ¼ of 1% on all between 0 and $6,000.00.

"(3) if the same shall be at least $6,000.01, the tax shall be ½ of 1% on all

1. Rule 20 of this Court provides that, within the discretion of this Court, the Court of Chancery, inter alia, may certify questions of law arising in any cause before it where the questions relate to the constitutionality of a statute which has not been, but should be, settled by this Court.

between 0 and $6,000.01 and on all over $6,000.01."

The questions certified, referring to the Code as "the Ordinance", are as follows:

"1. Does the Ordinance deny to Plaintiff and those similarly situated equal protection of the laws as guaranteed by the 14th Amendment to the Constitution of the United States by arbitrarily and/or unreasonably discriminating against them in the levy of a tax of ½ of 1% upon the first $4,000 of their annual earned compensation while the compensation and net profits of those persons earning $4,000 or less annually are exempt from said tax?

"2. Does the Ordinance deny to Plaintiff and to those similarly situated equal protection of the laws as guaranteed by the 14th Amendment to the Constitution of the United States by arbitrarily and unreasonably discriminating against them in the levy of a tax of ½ of 1% upon the first $6,000 of their annual earned compensation while the compensation and net profits of those persons earning $6,000 or less annually is subject to a tax of only ¼ of 1%?

"3. Does the Ordinance violate Article VIII, Section 1 of the Constitution of the State of Delaware in that the exemptions and partial exemptions and/or immunities described in Questions (1) and (2) create a tax which is not uniform upon the same class of subjects within the territorial limits of the authority levying the tax?

"4. Does the Ordinance violate Article VIII, Section 1 of the Constitution of the State of Delaware in that the exemptions and partial exemptions and/or immunities described in Questions (1) and (2) are not established or authorized by act of the General Assembly of the State of Delaware?"

The answer to each question is in the negative.

## II.

The Equal Protection Clause of the Fourteenth Amendment, as applied to tax laws, is the theme of Questions 1 and 2. We consider both questions together.

The plaintiff points to the feature of the Code which subjects one taxpayer to a levy on a certain portion of his annual compensation at one rate, while subjecting another taxpayer to a levy at a lower rate on the same amount of income. It is argued that there is an arbitrary and unreasonable discrimination against the plaintiff, and others similarly situated earning in excess of $6,000. annually, in that they are taxed at the rate of ½ of 1% upon the whole of the first $6,000., whereas those earning between $4,000. and $6,000. are taxed at the lower rate of ¼ of 1%, and those earning less than $4,000. are not taxed at all. The plaintiff complains that the Code arbitrarily and unreasonably classifies taxables by total income levels rather than classifying levels of income, as in the graduated rate schedules of the Federal and State income tax. Specifically, the plaintiff argues that it is unfair discrimination and a violation of the equal protection of the laws to tax her $20. upon the first $4,000.01 of her earnings while permitting others earning up to $4,000. to be tax free; and, similarly, she claims that it is arbitrary and unreasonable to tax her $30. upon the first $6,000.01 of her earned income when others earning exactly $6,000. are taxed $15.

■ At the outset, it must be understood that courts do not test the constitutionality of taxing statutes by subjective standards. The issue before us is the constitutionality of the tax measure—not whether the rate structure is the most fair, or the most practical, or the most wise. There probably has never been a revenue statute which, by design or oversight, has not favored some group and laid the basis for a claim of unfairness to others. See Stephan v. State Tax Commissioner, Del. Supr., 245 A.2d 552 (1968).

■ In examining the Code for conformity with the Equal Protection Clause, there is but one test: Is there a reasonable basis for the classifications made as between taxables? If there is, and if it cannot be said that the classifications as between taxables are clearly arbitrary and capricious, the test of equal protection of the laws is met. There is no "iron rule of equality" imposed by the Fourteenth Amendment. Allied Stores of Ohio, Inc. v. Bowers, Tax Commissioner, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

Judge Rodney admirably stated in Conard v. State, 2 Terry 107, 16 A.2d 121 (1940), the controlling guidelines to be applied here:

"It is generally agreed that a classification for the purpose of taxation, not purely arbitrary but based on reason, is entirely proper; and that uniformity as applied to occupation taxation simply means taxation that acts alike on all persons similarly situated. The differences upon which the classification is based need not be great or conspicuous; nor is it necessary that the court perceive the precise legislative reason for the classification, for if any state of facts can reasonably be conceived that would sustain the classification, the existence of that state of facts at the time of the enactment of the law must be assumed. There is, of course, no fixed standard by which the reasonableness of the classification can be measured, and each case must stand upon its own particular facts. The Legislature has a broad discretion in the matter of classification, and the courts will not assume to review the classification unless it is clearly arbitrary. The courts will not assume to substitute their judgment as to what is reasonable and proper, or whether the classification is the wisest or best that could be made, and the classification will be held valid if the court is able to see that the Legislature could regard it as reasonable and proper without doing violence to common sense.

"The constitutionality of the act is, of course, presumed; and it follows that the reasonableness of the classification is also presumed, and that the burden rests upon the objector to show that it is unreasonable. See 1 Cooley Taxation, 334."

These guidelines have been stated and reiterated in various forms and with varying degrees of emphasis by the United States Supreme Court. A good summary of the applicable principles appears in Madden v. Commonwealth of Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940) as follows:

"The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that 'the fourteenth amendment was not intended to compel the states to accept an iron rule of equal taxation,' and the passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and aggressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

See also Allied Stores of Ohio, Inc. v. Bowers, Tax Commissioner, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

Having in mind the rules thus stated, governing the judicial review of classifications in revenue measures, we are not persuaded that the Code classifications before us are clearly without reasonable and proper bases or are clearly arbitrary. It is manifest, we think, that the classifications were based upon the City Council's conception of a wage earner's ability to pay this new and additional tax. We take judicial notice that a wage level below $4,000. per annum for an urban family of four has been generally recognized as the poverty level; and that the range between $4,000. and $6,000. for such family unit is marginal. We take judicial notice that the Federal Government's poverty index at the end of 1968 allowed a non-farm family of four $3,553. per year, or $2.43 per person per day, to meet basic, essential living expenses; that in contrast to the poverty index, a United States Department of Labor study in 1969 found that an urban American family of four needed at least $4.05 per person per day, or more than $5,900. per year, to meet its basic needs.[2]

It is conceivable that the Mayor and Council of Wilmington were aware of statistics such as these, and that the legislative intent was to give a "tax break" to wage earners in those marginal income areas so close to the recognized borders of economic hardship. By the classifications adopted, the City Council commenced the tax obligation at the $4,000. level; it could have reasonably concluded, we think, that the taxable earning less than that amount was economically unable to contribute to this new levy. The Council imposed a reduced tax burden upon the taxable earning between $4,000. and $6,000.; it could have reasonably concluded, we think, that wage earners in this marginal range could be called upon for only a partial contribution without undue economic hardship. And, obviously, the legislators concluded that wage earners making more than $6,000.

could afford the new tax of $30. per year on that amount without economic hardship.

■ Under the circumstances, we cannot say that the Code classifications were clearly unreasonable or clearly arbitrary. The plaintiff has failed to sustain her burden of negating every conceivable basis which might support the classifications as reasonable and proper "without doing violence to common sense." The broad discretion vested in the legislative branch of government for the creation of tax classifications was not abused in this case.

We conclude, therefore, that the requirements of equal protection of the laws have not been violated by the Code, as asserted by the plaintiff here.

In reaching this decision, we are mindful of various other arguments tendered by the plaintiff: She says that it is arbitrary and unreasonable to attempt to classify on the basis of ability to pay the tax where gross income rather than net income is used as the base. The argument is attractive for its practicality; true it is that some have less left out of $6,000. gross income than others have out of $4,000. But, again, the test is overall reasonableness, not practical application in individual cases. We are not persuaded that it is unreasonable to conclude as a broad, general rule, in the light of known basic minimum needs for an urban family, that a taxable earning more than $6,000. per year will be able to meet the new $30, per annum tax burden without undue economic hardship; that a taxable earning less than $6,000. but more than $4,000. per year will have a lesser capability for economic reasons, but may bear a reduced share of the burden; and that a taxable earning less than $4,000. will not be able to meet any part of the new tax load without undue economic hardship. We think that this was undoubtedly the rationale of the legislators; and we think it quite reasonable.

2. Report of the President's Commission on Income Maintenance Programs. N.Y. Times, November 13, 1969, p. 34.

■ Another feature of the Code labeled arbitrary and capricious by the plaintiff is the change of tax rate which occurs when one cent more than $4000., and one cent more than $6,000., is earned. The answer to this seemingly arbitrary classification is simply the necessity of the law in the creation of tax classifications. That necessity was well stated by Justice Holmes in Louisville Gas & Electric Co. v. Coleman, 277 U.S. 32, 41, 48 S.Ct. 423, 426, 72 L.Ed. 770 (1928):

> "When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark."

Judicial approval of tax classifications differentiated by small amounts is not unusual: In Magoun v. Illinois Trust & Savings Bank, 170 U.S. 283, 18 S.Ct. 594, 42 L.Ed. 1037 (1897), for example, the legatee of $10,000. was subject to a three percent tax giving him a net of $9,700., whereas the legatee of $10,001. was subject to a four percent tax and would receive only $9,600.-96. The United States Supreme Court held the classification reasonable. And in Clark v. Titusville, 184 U.S. 329, 22 S.Ct. 382, 46 L.Ed. 569 (1901), the Court sustained as reasonable a $5.00 tax upon merchants having gross sales of $1,000. or less, and a $10. tax upon those similarly situated having sales of $1,001. or more. Similarly, in Metropolis Theater Co. v. Chicago, 228 U. S. 61, 33 S.Ct. 441, 57 L.Ed. 730 (1912), the Court approved as reasonable a tax of $1,-000. upon theaters charging admissions of $1.00 or more, but only $400. upon theaters similarly situated charging admissions of less than $1.00 and more than 50 cents.

We have concluded, therefore, that the classifications were not rendered clearly improper or unreasonable by reason of the minimal amounts which were made the bases of changes in the tax rates.

Finally, on this point, the plaintiff relies heavily upon Kalian v. Langton, R.I., 192 A.2d 12 (1963). There, the Court held violative of the Equal Protection Clause, and arbitrarily discriminatory in favor of small businesses, the immunity from a tax on businesses the gross receipts of which were less than $30,000., while subjecting businesses the gross receipts of which were in excess of $30,000. to a tax on all but $5,000. of the total receipts. As we have noted, there is no fixed standard by which the reasonableness of a classification can be measured. Each case must be considered on its own facts. We decline to adopt to this case the rationale of the Kalian case.

For the reasons stated, we hold that the Code classifications are reasonable; that the Code acts alike upon all persons similarly situated within each classification; that, therefore, it is not violative of the equal protection of the laws.

Accordingly, Questions 1 and 2 are answered in the negative.

### III.

■ Question No. 3 raises the question of whether the Code violates Article 8, § 1 of the Delaware Constitution which provides that "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax * * *."

The standards and guidelines for this guaranty of uniformity are substantially the same as those used for testing compliance with the equal protection guaranty. Under either guaranty, the constitutionality

of the measure is to be determined by the reasonableness of the classification attempted. Conard v. State, 2 Terry 107, 16 A.2d 121 (1940).

We have found the classifications reasonable. It follows, in our opinion, that the Code is in compliance with the uniformity requirement of the Delaware Constitution.

In this connection, we have considered In re Zoller's Estate, 3 Storey 448, 171 A. 2d 375 (1961), certain language of which is relied upon by the plaintiff for the proposition that a graduated tax, the graduations of which depend entirely upon the total amount or value held, would violate the uniformity guaranty of the Delaware Constitution if the subject of the tax is property. The *Zoller* case involved a Statute imposing fees for the services of the Register of Wills, the amount of the fee being a varying percentage of the value of the estate. The cited case is not in point.

Question No. 3 is answered in the negative.

### IV.

■ Finally, the plaintiff contends that the Code violates the provision of Article 8, § 1 of the Delaware Constitution that "the General Assembly may by general laws exempt from taxation such property as in the opinion of the General Assembly will best promote the general welfare." The argument is that the City Council's exemption of taxables earning less than $4,000. constitutes a fatal violation of that provision. We disagree.

By the Enabling Act referred to above, the General Assembly delegated to the legislative body of the City of Wilmington a general and unrestricted power to tax. Necessarily implied in the broad delegation of taxing power was the power to determine, within the one percent limitation of the Enabling Act, the amount of taxes to be raised, the rate of taxation, and all other necessary and essential elements of the power to tax, including the power to carve out reasonable and proper exemptions as "will best promote the public welfare." See Brennan v. Black, 34 Del.Ch. 380, 104 A. 2d 777 (1954). The power to grant such exemptions was not specifically withheld or limited by the Enabling Act. Inherent in a delegation of the power to tax, in our opinion, must be the power to create reasonable and proper exemptions, unless that power is expressly withheld by the General Assembly. The sound implementation of a delegated taxing power requires such a rule and infringes no constitutional limitation. See Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).

We hold, therefore, that by necessary implication, the power to grant reasonable and proper exemptions, as "will best promote the public welfare", must be deemed to have been delegated by the General Assembly to the City Council in this case.

■ The plaintiff relies upon cases holding that a delegation of legislative power to an administrative body is unlawful unless proper standards and guidelines are established in the act of delegation, citing State ex rel. Morford v. Tatnall, 2 Terry 273, 41 Del. 273, 21 A.2d 185 (1941); Darling Apartment Company v. Springer, 25 Del.Ch. 98, 15 A.2d 670 (1940); In re Opinion of the Justices, 4 Storey 366, 54 Del. 366, 177 A.2d 205 (1962); In re Opinion of the Justices, Del.Supr., 246 A.2d 90 (1968). These cases and the rule for which they stand are not in conflict with our conclusion that, in the instant case, the General Assembly is deemed to have passed on to the legislative body of the City the power of exemption, subject however to the constitutional standard and guideline, also necessarily implied, that any such exemption must "best promote the general welfare." We think that, although general, the guideline is sufficient to sustain the validity of the delegation of power to a municipal legislative body. See New York Central Securities Corp. v. United States, 287 U.S. 12, 53 S.Ct. 45, 77 L.Ed. 138 (1932) where

"the public interest" was held a sufficient standard. See also Crawford on Statutory Construction, § 15, p. 26; 1 Davis, Administrative Law Treatise, § 2.03.

For the reasons stated, we answer Question No. 4 in the negative.