Breitel, J.
This appeal brings before the court for construction the new Public Employees’ Fair Employment Act (Civil Service Law, art. 14; L. 1967, ch. 392, also known as the Taylor Act). Involved is whether the Public Employment Relations Board, created by the statute, may promulgate a provisional order directing the State Negotiating Committee, designated by and acting for the Governor, to desist from negotiating with the Civil Service Employees Association on an exclusive basis and to be “ neutral ” in its treatment of employee organizations which file timely petitions with the Board until that Board resolves the dispute concerning representation status.
In this article 78 (CPLR) proceeding brought by the Association against the Board and various employee organizations petitioning the Board with respect to representation status, Special Term sustained the Board and dismissed the petition. The Appellate Division reversed and held that the Board’s order had *545 been issued improvidently and prematurely. It held that there was no evidence that the Negotiating Committee was intending or threatening to act with “ exclusivity ” in its negotiations with employee representatives or that it was not “ neutral.” It also suggested that the latter term was of doubtful definiteness in the present context of events.
The order of the Appellate Division sustaining the petition and reversing the judgment, at Special Term dismissing the petition should be affirmed. It is concluded that'the Board did not have the power to issue the provisional order.
The Association has 101,300 members among State employees and claims to represent them in negotiations with the State government concerning employment conditions. Six of the 39 organizations petitioning before the Board for representation status claim to represent at least some 35,000 State employees with respect to employment conditions. The present record does not disclose the membership of the 6 or the 39 organizations. On November 15, 1967, in response to demands for recognition by the Association, the Negotiating Committee determined that it would negotiate collectively with three units of State employees: professional employees of the State University, members of the State police, and a general unit of all other State employees except members of the militia and those deemed to be management. The Association, in the same determination, was recognized to negotiate on behalf of employees of the general unit for a one-year period. The present issue involves only the general unit. The organizations opposed to the Association resist the establishment of the general unit in which, because of its size and the membership of the Association, the latter would have an overwhelming majority. They contend before the Board that there should be several smaller bargaining units based on the nature of different employments. In such units they would have a fair opportunity to establish their right to represent the employees in collective negotiation with the State. The Board has entertained their petitions and, because it asserts that it cannot resolve the disputes for an extended period, it issued the provisional order to maintain the status quo. Each side points to the time advantages sought by the adversary in expediting or delaying the resolution of the representation dispute.
*546 The Board and the smaller organizations have sought to analogize the new statute to the State and Federal Labor Relations Acts (New York State Labor Relations Act, L. 1937, ch. 443; Labor Management Relations Act, 61 U. S. Stat. 136 [1947], as amd., U. S. Code, tit. 29, § 141 et seq.), under which by judicial interpretation the respective labor boards have the power to issue temporary cease and desist orders pending determination of representation disputes. While it is true that the new statute governing State and municipal employment draws heavily on the statutes regulating private employer-employee relations, the differences between the statutes are marked and undoubtedly reflect the legal and economic differences between public and private employment.
The most notable feature in the new statute is section 204, which reads:
“ § 204. Recognition and certification of employee organizations.
“ 1. Public employers are hereby empowered to recognize employee organizations for the purpose of negotiating collectively in the determination of, and administration of grievances arising under, the terms and conditions of employment of their public employees as provided in this article, and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment.
“ 2. Where an employee organization has been certified or recognized pursuant to the provisions of this article, the appropriate public employer shall be, and hereby is, required to negotiate collectively with such employee organization in the determination of, and administration of grievances arising under, the terms and conditions of employment of the public employees as provided in this article, and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment.”
It gives the public employer the power to recognize employee organizations and requires the employer to negotiate with such recognized organizations. There is no similar provision in the Federal and State Labor Relations Acts. The quoted section also contains a similar requirement to negotiate with a certified as distinguished from a recognized organization.
*547 An organization which disputes the representation status of an employer-recognized organization may invoke the procedures of the Board under sections 205 and 207 to obtain Board certification. In that event it may displace the previously employer-recognized organization and the Board, under paragraph (k) of subdivision 5 of section 205, may “ exercise such other powers, as may be appropriate to effectuate the purposes and provisions of this article.” Presumably, the Board may then issue orders to enforce its determinations, although the statute contains no other direct delegation of such powers (see § 210, subd. 4). But the condition precedent to such orders is the making of a determination by the Board (§ 205, subd. 5, pars, [b], [c]; § 206). In this matter the Board made no determination, except that it required time to resolve the representation dispute and that, in the meantime, the Negotiating Committee was to be restrained in the particulars already described. Nor did the Board follow any of the procedures, including hearings, required by sections 205 and 207 in making determinations.
A significant difference between the State Labor Relations Law and the present statute concerns the presence in the one and absence in the other of provisions relating to unfair labor practices and cease and desist orders (Labor Law, §§ 704, 706, subd. 3). Even the sections providing for judicial enforcement are quite different, the provision in the one being quite broad and in the present statute quite narrow (Labor Law, § 707; Civil Service Law, § 210, subd. 4; § 211).
Consequently, the Board had no power to issue the instant order. The conclusion is mandated by the statutory pattern which gives the public employer the power to recognize an employee organization and requires that it negotiate with it. This departure from the private labor relations statutes is explained, perhaps, by the nature of government operations in this State. Such operations are regulated by annual budgets and appropriations adopted by law-making bodies. Indeed, the negotiating executives probably have no ultimate power to bind the appropriate legislative bodies, although if the provisions of the statute are followed they may enter into written agreements with recognized or certified organizations. (Without the statute, they would presumably not have even that power.)
*548 The critical tipie elements for public employers, who owe a very special obligation to the public not owed by private employers, are exemplified in this case in that the State’s new fiscal year begins April first, and the budget and appropriation bills must be projected and adopted before then. The matters of time, budgets, and appropriations, as well as the special obligations of public employers, may well explain the conferring of power on the public employer to recognize and negotiate with employee organizations, untrammeled by representation dispute proceedings until they have been resolved by the Board through certifications of appropriate bargaining units and employee organizations.
The Appellate Division was quite correct in stating that the Negotiating Committee had not extended explicitly exclusive status to the Association, and, indeed, the public employer is not given such power by section 204. Nor is the public employer given power as such to establish bargaining units (compare § 204 with § 205, subd. 5, par. [f]). True, by extending or withholding recognition and by the designation of bargaining units some of the effects of exclusiveness may be indirectly accomplished. Such indirect but substantial effects, where improper or undesirable, may be corrected by the Board by following its procedures on petitions filed with it pursuant to section 205. But it must follow the procedures and make a determination by providing a resolution of a particular dispute. It may not otherwise interfere with the executive process, under the present statute, without doing as much. While this may leave some sort of gap in the pattern, that is the consequence of the statute’s plan, which presumably was intentional. The Board may accomplish its purposes by expedited action instead of stating, as it does, that it requires some indefinite time into the year beyond the budget and appropriation period. Or further legislation should be obtained, assuming that the law-making agencies would allow such interference as the Board has attempted to engage in here.
Accordingly, the order should be affirmed, without costs.