112 N.J. Super. 237 (1970)
270 A.2d 744
ASSOCIATION OF NEW JERSEY STATE COLLEGE FACULTIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE BOARD OF HIGHER EDUCATION, THE GOVERNOR'S EMPLOYEE RELATIONS POLICY COUNCIL, FRANK MASON, DEPUTY DIRECTOR OF THE OFFICE OF EMPLOYEE RELATIONS, THE PRESIDENT OF THE CIVIL SERVICE COMMISSION, THE STATE TREASURER, THE DIRECTOR OF THE DIVISION OF BUDGET AND ACCOUNTING, AND THE LEGISLATIVE BUDGET AND FINANCE DIRECTOR, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 7, 1970.
*239 Mr. Jack Mandell for plaintiffs (Messrs. Balk, Jacobs, Goldberger & Mandell, attorneys).
Mr. Theodore A. Winard, Deputy Attorney General, for defendants (Mr. George F. Kugler, Attorney General, attorney).
FELLER, J.S.C.
This is an action in lieu of prerogative writs. Plaintiff requests summary judgment commanding defendant Board of Higher Education to meet at reasonable times and negotiate in good faith with plaintiff Association (hereinafter referred to as plaintiff), and to enjoin the Deputy Director of the Office of Employee Relations from interfering with the negotiations between plaintiff and defendant Board of Higher Education. This is also an action for a judgment declaring the Office of Employee Relations and the Governor's Employee Relations Advisory Council to be illegal and void, and for a judgment declaring unconstitutional L. 1970, c. 96, and also to enjoin defendants from the implementation of the Hay Associates Report.
Defendants have made a cross-motion for summary judgment. They contend that the Governor and his duly constituted representatives may exercise authority over the conduct of collective negotiations in the State Government and that the provisions, and the implementation of the Hay Associates Report are constitutional and do not interfere with good faith negotiations.
The New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. (L. 1968, c. 303) was adopted in 1968 as an amendment and supplement to the New Jersey Mediation Act. This statute created the Public Employment *240 Relations Commission consisting of seven members, to be appointed by the Governor by and with the consent of the Senate. Of such members two shall be representatives of public employers, two shall be representatives of public employee organizations, and three shall be representatives of the public, including the appointee who is designated as chairman. The act followed a long study by a legislative commission of the need for establishing a procedure for considering the grievances of public employees. L. 1966, c. 70. The commission recommended "legislation setting forth a procedure that is fully compatible with and complementary to existing Civil Service systems and present laws and regulations governing personnel matters in public employment at all government levels in New Jersey." In particular, it said that such legislation, among other things, "should establish the obligation of public employers * * * to meet with employees through representatives of their own choosing for the mutual resolution within the law of grievances and proposals." The detailed history of the act appears in the opinion of the Supreme Court in Lullo v. International Ass'n of Firefighters, 55 N.J. 409 (1970). The law was enacted on September 13, 1968 over the conditional veto of Governor Hughes.
On the same day an act authorizing management consultant contracts for study of state employment conditions was adopted by the Legislature for the purpose of providing the Governor and Legislature with standards and guidelines in the preparation of budgets, to permit the State to gain and maintain a competitive position in its recruitment and retention of employees. L. 1968, c. 304.
On December 19, 1968 Governor Hughes announced that he had established a State Employee Relations Policy Council to act as a policy unit for the State of New Jersey in all matters concerning employee relations. The Governor further announced that the Council would consult on a continuing basis with directors of state departments and agencies in order to resolve the entire range of policy issues *241 concerning employee relations. On January 17, 1969 the Governor issued a directive to all members of the Cabinet, heads of all divisions, departments, bureaus, institutions and agencies in the State of New Jersey. The Governor directed that "any action, or judgment or decision on any question or issue falling within the meaning of the law, should be taken only after consultation with the State Employee Relations Consultant."
On July 15, 1969 the Public Employment Relations Commission created by L. 1968, c. 303, supra, issued a certification of Public Employee Representative to the effect that plaintiff is the duly certified collective negotiations representative of the faculties of the six state colleges. Plaintiff and defendant Board of Higher Education commenced collective negotiations on July 19, 1969 and met periodically until February 18, 1970, when an impasse in negotiations was declared by plaintiff and a mediator was appointed by the Public Employment Relations Commission according to the provisions of N.J.S.A. 34:13A-6(b) (L. 1968, c. 303), supra. Mediation sessions were held between February 20, 1970 and May 6, 1970. The mediator was unable to resolve the impasse in collective negotiations, thereby resulting in the appointment of a fact-finder by the Commission on May 15, 1970, also according to the terms of N.J.S.A. 34:13A-6(b). Fact-finding hearings were held on May 26 and 27, at which defendant Frank Mason, the Deputy Director of the Office of Employee Relations, presented the position of the State and participated in the negotiations.
On April 2, 1970 Governor Cahill issued Executive Orders Nos. 3 and 4 creating the Governor's Employee Relations Policy Council and the Office of Employee Relations. The purpose of the Council, as set forth in the Executive Order, was to make recommendations to the Governor concerning employee relations and relative matters involving state employees. The purpose of the Office of Employee Relations, as set forth in Executive Order No. 4, was to *242 assist the Council and to act as the Governor's agent in collective negotiations. The Director of Employee Relations was also empowered to make recommendations and reports to the Council on state employee relations.
On or about July 1, 1970 the state of New Jersey, pursuant to the provisions of L. 1968, c. 303 establishing a study of state employment, and the provisions of L. 1970, c. 96 appropriating funds for the implementation of the management consultant (Hay) report, placed state employees on appropriate salary scales and ranges corresponding to the guidelines set down by the report. On July 13, 1970 the President of the Civil Service Commission advised that aggrieved state employees may appeal to a Hay Appeals Review Board from salary ranges assigned to their class titles, with a review by the Civil Service Commission.
The issues to be decided are: (1) whether the Board of Higher Education is a public employer within the meaning of the 1947 New Jersey Constitution and the New Jersey Employer-Employee Relations Act; (2) whether the Governor's Employee Relations Policy Council and the Office of Employee Relations are duly constituted bodies in the Executive Branch of the State Government in accordance with the provisions of the 1947 Constitution (Executive Orders 3 and 4); (3) whether L. 1970, c. 96 provides for an unconstitutional delegation of legislative power and whether it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and (4) whether the implementation of the recommendations of the Hay Report interferes with good-faith collective negotiations.

I
N.J.S.A. 34:13A-3(c), in pertinent part, provides as follows:
* * * This term shall include "public employers", and shall mean the State of New Jersey, or the several counties and municipalities *243 thereof or any other political subdivision of the State or a school district, or any special district or any authority, commission or board, or any branch or agency of the public service.
Plaintiff contends that defendant Board of Higher Education or its representatives is the "public employer" in these negotiations and that the Governor, through his representative, the Deputy Director of the Office of Employee Relations, Frank Mason, has interfered and continues to interfere in the conduct of negotiations and in the means for the resolution of the impasse.
In support of its argument plaintiff cites Art. V, § IV, par. 1 of the 1947 New Jersey Constitution, which provides, inter alia:
All executive and administrative offices, departments, and instrumentalities of the State government, * * * shall be allocated by law among and within not more than twenty principal departments, in such manner as to group the same according to major purpose so far as practicable * * *.
Pursuant thereto the Legislature enacted L. 1966, c. 302 (18A:3-1 et seq.), whose title reads:
An Act concerning higher education, establishing a Department of Higher Education as a principal department in the Executive Branch of State Government and providing an appropriation therefor.
By virtue of N.J.S.A. 18A:3-1, the Department of Higher Education consists of a Board of Higher Education, a Chancellor, and such divisions, bureaus, branches, committees, officers and employees as are specifically referred to in the Higher Education Act.
General supervision of higher education in the State is reposed in the Board of Higher Education by N.J.S.A. 18A:3-13, which provides:
It shall be the duty of the board of higher education to advance long range planning for the system of higher education as a whole *244 in the state; establish general policy for the governance of the separate institutions; coordinate the activities of the individual institutions which, taken together, make up the system of higher education in New Jersey; and maintain general financial oversight of the state system of higher education. The board shall not administer the individual institutions of higher education, its own administration being specifically reserved unto each of such institutions.
Within the limitations imposed by general legislation applicable to all agencies of the state and the provisions of this chapter, the board is hereby granted exclusive jurisdiction over higher education in this state and its constituent parts and the requisite power to do all things necessary and proper to accomplish the aims and carry out the duties provided by law.
Additional powers and duties are granted to the Board of Higher Education in N.J.S.A. 18A:3-14(h) which commands the Board to
Set policy on salary and fringe benefits, and establish personnel policies for the public institutions of higher education; * * *.
In N.J.S.A. 18A:3-16 the Board of Higher Education is granted all powers, in addition to those specifically provided by law, requisite to the performance of its duties.
As stated, defendants contend that the Board of Higher Education is not a public employer within the meaning of the 1947 Constitution and the New Jersey Employer-Employee Relations Act (N.J.S.A. 34:13A-3 (c)), but that the Governor of the State is the public employer.
The Legislature, in L. 1968, c. 303, did not define the "representative of the public employer" in the State Government obligated to negotiate the terms and conditions of employment. N.J.S.A. 34:13A-3(c), N.J.S.A. 34:13A-5.3. In the absence of any express or clearly implied legislative authorization to the Board of Higher Education in this respect, resort must be had to applicable principles of constitutional law, with due deference to the power of the Governor to superintend the internal administration of the Executive Branch of the State Government. Art. V, Sec. I, par. 1, of the 1947 Constitution provides in pertinent part:
*245 The executive power shall be vested in a Governor.
Art. V, Sec. IV, par. 2 provides in pertinent part:
Each principal department shall be under the supervision of the Governor.
To sustain the authority of the Board of Higher Education in the conduct of collective negotiations with state employees in the absence of a clear allocation of such function by the Legislature in effect tends to interfere with the execution of the duty of internal supervision of the principal departments of government imposed on the Chief Executive by the 1947 Constitution and to direct the manner of its performance in the administration of collective negotiations with all state employees.
The question is: Who is the employer in relation to plaintiff? Is it the Board of Higher Education within the meaning of the act, or is the Governor, as the Chief Executive of the State? In reading the definition of "employer" set out in N.J.S.A. 34:13A-3, supra, it is clear that the term shall include "public employer" and shall mean the State of New Jersey.
The Board of Higher Education is a principal department within the Executive Branch of the government. This court takes judicial notice that the custom and practice in industry and other business organizations is that a department or department head within an organization is not an employer. The organization itself is the employer. It is true that under the provisions of N.J.S.A. 34:13A-3(c) a school district is designated as a public employer. It is also true that under this statute the Board of Higher Education is not designated as a public employer. Apparently the intention of the Legislature in designating a school district as such is due to the fact that a school district is a legal entity separate and apart from the county or municipality where it is located. The Board of Higher Education is not a legal entity, but rather one of the principal departments of the Executive Branch of *246 State Government. Furthermore, as stated in Art. V, Sec. I, par. 1, of the 1947 Constitution, supra, each principal department shall be under the supervision of the Governor, so it is evident that the Governor is the public employer of all public employees in any of the principal departments of the Executive Branch of State Government that are under his supervision.
During the 1930's and 1940's the number of departments, bureaus, commissions, boards and agencies within the State Government grew to a point where they totaled almost one hundred. Jacobs "Administrative Agencies, Their Status and Powers", 2 Proceedings of the 1947 Constitutional Convention, at 1431-1434. The autonomous or semi-autonomous nature of many of these bodies led then Governor Driscoll to comment in an address before the Newark Kiwanis Club on May 15, 1947, which address was incorporated in the minutes of the proceedings of the Constitutional Convention:
Being of the executive branch, I reminded my listeners of the fact that the Governor in this State, a rumor to the contrary notwithstanding, is not the sole Chief Executive of the State. He is just one of the chief executives of the State, because there are many heads of departments, appointed by boards, councils and former Governors, who exercised authority during the Governor's term, and frequently exercised it entirely apart from the authority exercised by the Governor. I say this not in criticism of the men with whom I am presently associated  merely in criticism of an antiquated system that, instead of providing for a centralized and responsible authority, provides for divided responsibility and divided authority. [Milmed, "State Administrative Organization and Reorganization," 2 Proceedings of the 1947 Constitutional Convention, at 1448; emphasis added]
The minutes of the Constitutional Convention reveal the avowed purpose of the framers to coordinate overall executive control of the principal departments of State Government in the Governor, subject to the power of the Legislature to allocate functions and duties among these departments. Professor George Graham of Princeton University testified before the Committee on the Executive, Militia, etc.:
*247 Paragraph 2 of Section IV, the provision that each principal department shall be under the supervision and control of the Governor, seems to me to be sound. If you bear in mind that the legislative body always has the power to specify what are to be the duties of the executive departments and key officials in those departments, there is no serious problem raised if the Governor should try to control the discretion of subordinates in individual cases. [5, Proceedings of the Constitutional Convention of 1947, at 387. emphasis added]
Similar statements were made to the Convention by former Governors of the State and other authorities on constitutional government.
For this court to direct the Association to negotiate with the Board of Higher Education would seriously undercut this constitutional prerogative of the Governor over State Government. The issue posed herein involves the constitutional commitment of internal supervision by the Chief Executive and, in the absence of legislation, involves an initial policy determination of a kind clearly for nonjudicial discretion.
The initial policy determination to restrict the scope of authority of the various executive departments and to centralize administration and control in the office of the Governor for purposes of collective negotiations among state employees is supported by the reason and spirit of L. 1968, c. 303. A written collective negotiations agreement is a commitment on the part of a public employer to implement and effectuate the terms and conditions of employment in conformity with its terms. N.J.S.A. 34:13A-5.3. The "public employer" is charged with the responsibility of effectively negotiating a meaningful agreement. In this regard, the ultimate responsibility is imposed on the Governor for the executive administration of the State Government.
N.J.S.A. 18A:64-6(g) provides, in pertinent part, that the board of trustees of a state college may
* * * [a]ppoint a treasurer and such deans and other professional members of the academic, administrative and teaching staffs as shall be required and fix their compensation and terms of employment in accordance with salary ranges and policies adopted by the board of *248 higher education and concurred in by the Governor which salary policies shall prescribe qualifications for the various classifications * * *. [emphasis added]
N.J.S.A. 52:27B-14 provides:
On or before October first in each year each department of the State Government, board, commission, officer or other State agency, hereinafter in this article called "spending agency," shall file with the commissioner a request for appropriation or permission to spend, as the case may be, which shall specify all expenditures proposed to be made by such spending agency during the next ensuing fiscal year. [L. 1944, c. 112, art. 3, § 5]
N.J.S.A. 52:27B-19 provides:
On or before December thirty-first of each year, or at such other time or times as the Governor may request, the commissioner shall certify and transmit to the Governor and Governor-elect the requests of the spending agencies, together with his findings, comments and recommendations thereon.
N.J.S.A. 52:27B-20 provides, in pertinent part:
The Governor shall examine and consider all requests for appropriations, together with the findings and recommendations of the commissioner, and shall formulate his budget recommendations which shall be transmitted to the Legislature as a budget message on or before the third Tuesday following the first meeting of the Legislature in each year, except a year in which a Governor shall be inaugurated, when he shall do so on or before February fifteenth following the commencement of his term. [Emphasis added]
L. 1970, c. 96, provides in part that no salary range or rate of pay shall be increased or salary adjustment paid in any higher education institution without the prior approval of the President of the Civil Service Commission, the State Treasurer, the Director of the Division of Budget and Accounting, and the Legislative Budget and Finance Director.
Therefore it is consistent with the statutory procedure set out above and with constitutional responsibility for a balanced *249 budget that the Governor and his representatives shall formulate the complete economic program for the State Government, including the Board of Higher Education. The office of the Governor is, therefore, the appropriate agency of the State to supervise the conduct of negotiations with units of state employees and to intercede and supersede the departments in collective negotiations on the substantial terms and conditions of employment.
Furthermore, L. 1968, c. 303 (N.J.S.A. 34:13A-3(e)) states, in effect, that the term "representative" shall include, inter alia, any organization, agency or person authorized or designated by a public employer to act on its behalf and represent it to them. Therefore, it would seem that before the impasse, the Board of Higher Education, one of the principal departments, was acting as the representative of the Governor, and during the latter part of the negotiations Frank Mason was also acting as the representative of the Governor.
In Civil Service Employees Ass'n. v. Helsby, 21 N.Y.2d 541, 289 N.Y.S.2d 203, 236 N.E.2d 481 (Ct. App. 1968), the issue posed concerned whether the New York Public Employment Relations Board could direct the state negotiating committee designated and acting for the Governor to desist from negotiating with state employees on an exclusive basis and to remain neutral in its treatment of employee organizations. The negotiating committee determined it would negotiate with three units of state employees pending a determination by the Public Employment Relations Board. The Court of Appeals recognized the primacy of the Governor in the implementation of a law concerning collective negotiations and held that the Public Employment Relations Board had no authority to restrain the Governor's negotiating committee. The court further indicated that the Public Employment Relations Board could not interfere with the executive process under the New York statute concerning collective negotiations.
*250 It is therefore the opinion of this court that the motion for summary judgment commanding defendant Board of Higher Education to negotiate with plaintiff should be denied. It is also the opinion of this court that summary judgment should be entered in favor of defendants.

II
Plaintiff contends that Executive Order No. 3, dated April 2, 1970, which set up the Governor's Employee Relations Policy Council, is unconstitutional, illegal and void. This Council consists of the State Treasurer, the Secretary of State, the President of the Civil Service Commission, the Comptroller and Director of the Division of the Budget and Accounting in the Department of Treasury, the Counsel to the Governor, and the Director of the Office of Employee Relations, all of whom serve without compensation. The purpose of the Council is to make recommendations to the Governor concerning employee relations and to render such reports to him as the Council determines or he directs.
Plaintiff further contends that Executive Order No. 4, also dated April 2, 1970, which creates an Office of Employee Relations in the office of the Governor, is likewise unconstitutional, illegal and void. The Office of Employee Relations consists of a Director and Deputy Director to assist the Council in all matters regarding relations between the State and its employees, and to act as the Governor's agent in conducting collective negotiations with employee organizations. The Director makes recommendations and reports to the Council concerning employee relations.
Plaintiff further contends that since Frank Mason was appointed Deputy Director under Executive Order No. 4, he, as an observer and agent of the Governor, has interfered with the negotiations between plaintiff and the Board of Higher Education, and that such interference constitutes an illegal usurpation of power and an illegal and unwarranted interference into higher education matters by the Executive, contrary to L. 1968, c. 303.
*251 Plaintiff states that Executive Orders 3 and 4 violate Art. V, sec. IV, par. 1, supra, which provides, in effect, that all executive and administrative offices, departments and instrumentalities of the State Government, etc., and their respective functions, powers and duties shall be allocated by law among and within not more than 20 principal departments, in such manner as to group the same according to major purposes as far as practicable, and which also provides that temporary commissions for special purposes may be established by law and need not be allocated within a principal department.
It is the argument of plaintiff that Executive Orders 3 and 4 should have been adopted by law according to the above provisions  and not by Executive Order.
It must be remembered that these Executive Orders do not create a new principal department, neither do they result in the creation of a temporary commission for a special purpose not allocated within a principal department.
A reading of Executive Orders 3 and 4 reveals very clearly that they set out duties and functions to implement the various duties and functions of the principal departments of the Executive Branch which have been allocated by law  according to major purposes so far as practicable. Furthermore, the Council and the Office of Employee Relations have power and authority to recommend only. More particularly, a reading of the contents of these Executive Orders reveals that they implement the provisions of L. 1968, c. 303, supra.
The Office of Employee Relations and its Deputy Director are duly constituted in the Executive Branch of the State Government in accordance with the authority bestowed by the 1947 Constitution. The interposition of the Deputy Director, based on such authority on behalf of the Governor, in the conduct of collective negotiations and in a fact-finding hearing before the Public Employment Relations Commission is thus fully justified by the constitutional power of the Governor to superintend the executive administration of *252 government in collective negotiations among diverse groups of state employees.
Original negotiations were conducted between plaintiff and defendant Board of Higher Education. These were negotiations between a department and plaintiff. However, the Board was unable to set salary benefits as provided in N.J.S.A. 18A:3-14(h) because of the impasse. It was then necessary to apply the provisions of L. 1968, c. 303, and when the impasse continued, the other statutory provisions. However, despite this the final budget to be submitted to the Legislature had to be recommended and concurred in by the Governor.
L. 1968, c. 303, § 8(b), provides in effect that in the event of a failure to resolve an impasse by mediation, the Division of Public Employment Relations is empowered to recommend or invoke fact-finding, with recommendations for settlement, the cost of which shall be borne by the parties equally. This is consistent with the recommendations of the legislative commission which preceded the enactment of L. 1968, c. 303, which recommended legislation "governing personnel matters in public employment at all government levels in New Jersey."
If, as plaintiff contends, they should be permitted to continue negotiations with the Board of Higher Education, the impasse might continue indefinitely. It is in the public interest that this matter be resolved because the State has the responsibility to provide for the financial support necessary to the continuation of the state college program, and such colleges shall be maintained for the purpose of providing higher education in the liberal arts and sciences and various professional areas, including the science of education and the art of teaching, at such places as may be provided by law. N.J.S.A. 18A:64-1 and N.J.S.A. 18A:64C-1.
The presence of Frank Mason at the negotiations as the agent of the Governor was a necessary step to avoid an indefinite continuation of the impasse, for the 1947 Constitution provides that each principal department shall be under *253 the supervision of the Governor, and supervision means the act of overseeing, or inspecting with authority, or superintending. See Black's Law Dictionary (3d ed.), at 1681.
There seems to be a void in the statute (L. 1968, c. 303) as to what may or must occur after the fact-finder submits a report. In Lullo v. International Ass'n of Fire Fighters, supra, 55 N.J. 409 (1970), the court, in upholding the constitutionality of L. 1968, c. 303 (N.J.S.A. 34:13A-1 et seq.), stated that the statute is novel legislation for New Jersey and that the commission established to administer it is working on unploughed ground. The court further stated that it is expected that many problems, both administrative and substantive, will confront the commission in due course.
However, N.J.S.A. 18A:3-13, supra, provides, in part, that within the limitations imposed by general legislation applicable to all agencies of the State and the provisions of this chapter, the Board is hereby granted exclusive jurisdiction over higher education in the State, etc. This would seem to limit the exclusive jurisdiction of the Board.
In N.J.S.A. 34:13A-2, supra, the policy of the Legislature was declared to be the prevention or prompt settlement of labor disputes  in the public sectors  and that this was for the best interests of the people of the State. And the same statute provided for the voluntary mediation of public employer-employee disputes under the guidance and supervision of a governmental agency, to promote permanent public-employee peace and the health, welfare, comfort and safety of the people of the State.
N.J.S.A. 18A:64-6(g), supra, provides for salary ranges and policies adopted by the Board of Higher Education and concurred in by the Governor. The word "concurrence," as used in the statute, means concurrence of opinion, agreement, meeting of minds; consent; approbation and approval. See 8 Words and Phrases (perm. ed.), at p. 588.
N.J.S.A. 52:27B-19 provides that the Commission shall transmit to the Governor and Governor-elect the requests *254 of the spending agencies, etc., and N.J.S.A. 52:27B-20 states that the Governor shall examine and consider all requests for appropriations * * * and shall formulate his budget recommendations, which shall be transmitted to the Legislature.
Thus, it is apparent from reading these statutes that all requests for appropriations, including the requests of defendant Board of Higher Education, must be subject to the limitations imposed by general legislation applicable to all agencies in the State; that the prompt settlement of labor disputes, under the guidance and supervision of a governmental agency, is for the best interests of the people of the State; that salary ranges and policies adopted by the Board of Higher Education must be concurred in by the Governor, and that the Governor shall examine and consider all requests for appropriations and formulate his budget recommendations which shall be transmitted to the Legislature.
Statutes constituting a system should be so construed as to make that system consistent in its parts and uniform in its operation. Where statutes are part of a general system relating to the same class of subjects and rest upon the same or similar reasons, they should be construed, if possible, so as to be uniform in their application and in the results which they accomplish; and statutes upon cognate subjects may be referred to although they are not strictly in pari materia. 2 Sutherland, Statutory Construction (2d ed.), § 443, at 847-848; Modern Industrial Bank v. Taub, 134 N.J.L. 260 (E. & A. 1946). This court must further take note of the fact that, wherever possible, statutes dealing with the same general subject will be recognized and harmonized. See Loboda v. Clark Tp., 40 N.J. 424 (1963).
Thus, it is very evident that as a result of the statutory scheme set out above, and also the constitutional provisions enumerated supra, that the Governor controls the request for expenditures of the Executive Branch of the State Government and, as a result, has an obligation to attempt to *255 settle labor disputes within that branch which result from an impasse.
In summary, it is the opinion of this court that the motion to declare unconstitutional, illegal and void Executive Orders 3 and 4 should be denied. The motion to enjoin defendant Frank Mason from negotiations with plaintiff Association should also be denied. It is the further opinion of this court that in view of the reasons set out above, the activities of Frank Mason did not constitute unwarranted interference or an illegal usurpation of power into higher educational matters.
Judgment shall be entered in favor of defendants on these issues.

III
Plaintiff argues that the conduct of defendant Board of Higher Education in refusing to meet and negotiate further with plaintiff since May 6, 1970 is an obvious violation of Art. I, par. 19 of the 1947 Constitution, which provides as follows:
* * * Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.
However, this procedure was followed during the negotiations between plaintiff and the Board from July 19, 1969 to the time plaintiff declared an impasse on February 18, 1970. This procedure was also followed during the mediation sessions between February 20 and May 6, 1970 when the mediator determined that he was unable to resolve the impasse, and it apparently was also followed after the appointment of a fact-finder who conducted hearings on May 26 and 27, 1970.
But plaintiff also contends that L. 1970, c. 96, which was approved on June 16, 1970, is unconstitutional for improperly delegating a legislative function to state administrative *256 officers without setting up adequate standards to guide the administration thereof.
The statute provides that no salary range or rate of pay shall be increased, or salary adjustments paid, in any state department, agency, commission or higher education institution without the prior approval of the President of the Civil Service Commission, the State Treasurer, the Director of the Division of the Budget and Accounting, and Finance Director. The statute also provides that any sums appropriated to the several departments for salaries may be made available for salary adjustments therein arising from various exigencies of the state service and for normal merit salary increments, as the President of the Civil Service Commission, the State Treasurer, the Director of the Division of Budget and Accounting, and the Legislative Budget and Finance Director shall determine.
Plaintiff states, in effect, that this statute gives these state officers unbridled discretion in determining salary ranges and rates of pay, salary adjustments and normal merit salary increments, without setting up standards to guide them in the exercise of their discretion; that these officers have been delegated authority by the Legislature to place state employees, including members of plaintiff Association on salary schedules and rates subject to rules and regulations which the aforesaid state officers are to establish, based insofar as practicable upon the recommendations in the report to the Governor and the Legislature pursuant to L. 1968, c. 304 (the Hay Associates Report).
The said statute provides as follows:
AN ACT authorizing management consultant contracts for studies of State employment conditions, and making an appropriation.
BE IT ENACTED by the Senate and General Assembly of the State of New Jersey:
Annual contracts for studies of State employment.
1. The Director of the Division of Budget and Accounting in the Department of the Treasury with the approval of the President of the Senate and Speaker of the General Assembly is authorized to enter into annual contracts on behalf of the State with a recognized *257 management consulting firm of its selection to prepare, and from time to time revise, a thorough study of wages, salaries, benefits, work productivity and working conditions of State employees and comparison thereof with comparable private employment, with the ends in view of providing the Governor and the Legislature with standards and guidelines for use in the preparation of annual budgets and appropriation acts for the support of the State Government that will permit fair treatment of State employees and permit the State to gain and maintain a competitive position in its recruitment and retention of employees.
2. There is appropriated to the Division of Budget and Accounting, Department of the Treasury for the purpose of this act the sum of $100,000.00.
3. This act shall take effect immediately. [Emphasis added]
The proper delegation of legislative power to administrative agencies within the Executive Department is not an infringement of the 1947 New Jersey Constitution, Art. III. The Legislature cannot delegate all its power, Schechter Poultry Corp. v. United States, 295 U.S. 495, 529, 530, 55 S.Ct. 837, 79 L.Ed. 1570 (1935), and in delegating segments of its power it must set up adequate rational standards to guide the administrative body to whom it is entrusting the exercise of such delegated power. This must be done in considering any delegation of legislative power. State v. Traffic Telephone Workers, 2 N.J. 335 (1949).
However, L. 1968, c. 304, provides that the Director of the Division of Budget and Accounting is authorized to enter into a contract with a management consulting firm with an end in view of providing the Governor and Legislature with standards and guidelines for use in the preparation of annual budgets. L. 1970, c. 96, provides that the placement of a State employee at any step or rate shall be subject to rules and regulations to be established by the President of the Civil Service Commission, the State Treasurer, the Director of the Division of Budget and Accounting, and the Legislative Budget and Finance Director, based on the recommendations in the Hay Report to the Governor and the Legislature.
Hence, the rules and regulations based on the recommendations of the Hay Associates Report represent a valid *258 and necessary means for the implementation of the provisions set forth in the act. As the court said in Cammarata v. Essex County Park Comm'n, 26 N.J. 404 (1958):
It is settled beyond controversy that the Legislature may enact statutes setting forth in broad design its intended aims, leaving the detailed implementation of the policy thus expressed to an administrative agency. See Lane v. Holderman, 23 N.J. 304, at pages 319-320 (1957), and the cases and statutes cited and discussed therein. Indeed, the function of promulgating administrative rules and regulations lies at the very heart of the administrative process. Through the entrustment of such powers, our lawmakers achieve expert and flexible control in areas where the diversity of circumstances and situations to be encountered forbids the enactment of legislation anticipating every possible problem which may arise and providing for its solution. [at 410]
It is not necessary for the Legislature to supply defendants with a set of specific detailed standards for their guidance. There is no unconstitutional delegation of legislative authority as long as the administrative discretion is hemmed in by standards sufficiently definitive to guide its exercise. 1 Sutherland, Statutory Construction (3d ed. 1943), c. 314. The courts have recognized that the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards to effectuate the legislative purpose. In Ward v. Scott, 11 N.J. 117 (1952), the court stated as follows:
It is settled that the Legislature may not vest unbridled or arbitrary power in the administrative agency but must furnish a reasonably adequate standard to guide it. N.J. Bell Tel. Co. v. Communications Workers, etc., 5 N.J. 354, 370 (1950); State v. Wheeler Auto Driving School, Inc., 17 N.J. Super. 488, 495 (App. Div. 1952). But the exigencies of modern government have increasingly dictated the use of general rather than minutely detailed standards in regulatory enactments under the police power. Thus, the Board of Public Utility Commissioners has been guided by simple standards of "public convenience and necessity" (R.S. 48:11-1) and "just and reasonable". R.S. 48:2-21. See Fornarotto v. Board of Public Utility Commissioners, 105 N.J.L. 28, 32 (Sup. Ct. 1928). The Commissioner of Alcoholic Beverage Control, with authority to fix prices and promulgate regulations (Gaine v. Burnett, 122 N.J.L. *259 39 (Sup. Ct. 1939), affirmed 123 N.J.L. 317 (E. & A. 1939)), has been guided by the general legislative pronouncement that the statute shall be administered in "such a manner as to promote temperance and eliminate the racketeer and bootlegger." R.S. 33:1-3, 39. And the Director of the Milk Control Board has been authorized to take such measures including the fixing of prices and the promulgation of regulations as may be "necessary to control or prevent unfair, unjust, destructive or demoralizing practices which are likely to result in the demoralization of agricultural interests in this State, engaged in the production of milk or interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State." See R.S. 4:12A-21; State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 521 (E. & A. 1935); Como Farms, Inc. v. Foran, 6 N.J. Super. 306, 312 (App Div. 1950). See also Veix v. Seneca B. & L. Assn., 126 N.J.L. 314, 323 (E. & A. 1941); Borough of Little Ferry v. Bergen County Sewer Authority, 9 N.J. 536, 544 (1952). [at 123-124]
See also Wes Outdoor Advertising Company v. Goldberg, 55 N.J. 347, 352 (1970); Elizabeth Federal S. & L. Ass'n, v. Howell, 30 N.J. 190 (1959); Burton v. Sills, 53 N.J. 86 (1968). In this regard, defendants have been authorized to adopt rules and regulations based on the recommendations in the Hay Report. L. 1970, c. 96. With the aforementioned in mind, the Legislature has consciously left to defendants the power it now seeks to exercise, guided by the standards and guidelines set out in the Hay Associates Report.
In determining whether adequate standards for exercise of powers delegated by statute to administrative officers are provided by a statute, this court is not confined to a particular section delegating such powers, but must examine the entire act in light of its surroundings and objectives, and such standards need not be stated in express terms if they may be reasonably inferred from the statutory scheme as a whole. In re Berardi, 23 N.J. 485 (1957).
Plaintiff's motion for a declaratory judgment declaring L. 1970, c. 96, unconstitutional because of lack of standards is therefore denied, and for the reasons set out above judgment will be entered in favor of defendants.
Plaintiff contends that pursuant to L. 1970, c. 96, defendants President of the Civil Service Commission, the *260 State Treasurer, the Director of the Division of Budget and Accounting, and the Legislative Budget and Finance Director have placed its members on salary levels and at rates pursuant to the rules and regulations established by said defendants in accordance with the recommendations in the Hay Report. The members have thus been treated differently as public employees than have other public employees who work for counties, municipalities, school districts and other public boards, authorities and agencies. Plaintiff urges that this treatment of its members denies them the equal protection of the law, as guaranteed by the Fourteenth Amendment of the United States Constitution.
The Fourteenth Amendment, section 1 provides, inter alia:
No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction the equal protection of the laws.
Plaintiff states that L. 1968, c. 303 (N.J.S.A. 34:13A-1 et seq.) treats of one class of public employment and defines all such employees as "public employees." The United States Constitution requires that the State treat all persons in that class of public employees in a like or similar manner. Robson v. Rodriguez, 26 N.J. 517 (1958).
Plaintiff also cites Washington National Ins. Co. v. Board of Review, 1 N.J. 545, 553 (1949). However, that case holds that the Fourteenth Amendment forbids class legislation and arbitrary discrimination against some and favoring others in like circumstances, and that the equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons under similar conditions and circumstances.
However, in the present case plaintiff's members are not in the same classification; they are public employees of the State. Nor are they considered to be operating under similar conditions and circumstances as those public employees *261 who work for counties, municipalities, school districts and other public boards, authorities and agencies.
Plaintiff operates under different statutes than the others: its members are employed at a higher and different level of government; they are employed by different public employers; they operate under different salary guides and ranges; they are protected by different tenure statutes, and they are compensated by different public employers. Thus, L. 1970, c. 96, does not create class legislation. The classification is based on material and substantial distinctions and differences reasonably related to the subject matter. The statute does, however, create uniformity within the class represented by plaintiff.
Therefore, it is evident that L. 1970, c. 96, does not violate the Equal Protection Clause of the Fourteenth Amendment. It must be remembered that our courts do not sit as a super-legislature and will accept the legislative judgment as to the wisdom of a statute, and will honor the presumption of constitutionality which attends all legislation. See Burton v. Sills, 53 N.J. 86, 95 (1968).
Plaintiff's motion for a judgment declaring the said statute unconstitutional as violating the Equal Protection Clause is denied.
For the reasons set out above, a judgment will be entered in favor of defendants.

IV
The implementation of the recommendations of the Hay Associates Report by defendants in accordance with L. 1968, c. 304, and L. 1970, c. 96, in the instant situation does not interfere with the conduct of good-faith collective negotiations within the meaning of the Employer-Employee Relations Act, N.J.S.A. 34:13A-5.3.
As stated supra, on July 15, 1969 the Public Employment Relations Commission issued a certification of the Association as the exclusive negotiating representative of the faculties in the state colleges. Negotiations commenced with plaintiff on *262 July 19, 1969. On February 18, 1970 plaintiff unilaterally declared an impasse in negotiations and a mediator was appointed by the Public Employment Relations Commission. The mediator was unable to resolve the impasse in negotiations, resulting in the appointment of a fact-finder on May 15, 1970, and the holding of hearings on May 26 and 27, 1970. On July 1, 1970 the recommendations of the Hay Associates Report were implemented by reason of L. 1970, c. 96, by placing the majority of the members of plaintiff on various salary scales and ranges. College administrators have been placed on appropriate salary scales and ranges commencing as of September 1, 1970. The six state colleges recently began operations for the school term 1970-71.
The issue posed by the implementation of the Hay Associates' recommendations as respects members of plaintiff Association during the pendency of a collective negotiating relationship is whether the unilateral act of the State in this instance has violated commonly recognized fair collective bargaining standards.
It is generally recognized that under certain circumstances in public employment a public employer is free to impose his own salary program on employees, subject to collective negotiations. The usual defense to unilateral action on the part of a public employer is an impasse in negotiations. This is especially true where there is a constitutional or legislative mandate for the public employment to commence or continue.
In Fair Lawn Education Ass'n v. Fair Lawn Board of Education (Docket No. L-30039-69 P.W., June 3, 1970), the court held that a teacher bargaining deadlock frees a board of education to impose its own salary scales and working conditions. In that case an action was brought to compel the board of education to show cause why it should not be restrained from sending contracts to nontenure teachers despite the pendency of collective negotiations. In addition, plaintiff sought an injunction to enjoin the board from *263 unilaterally setting the salary schedules for teachers. The court pointed to major areas of disagreement between the parties following lengthy negotiations, mediation and fact-finding by the Public Employment Relations Commission. On May 21, 1970, after negotiations had been in progress since October 1969, the Board passed a salary schedule for all teachers and mailed contracts to all nontenure teachers. The court, in rejecting the argument that the board's action was not lawful under the Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq., because it substituted unilateral action for collective negotiations, pointed out that the board was carrying out state law as set out in the 1947 New Jersey Const., Art. VIII, Sec. IV, par. 1, which provides that the Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all children in the State between the ages of 5 and 18 years. Judge Trautwein stated, in part:
I find in the instant case that while I cannot conclude that either party has been bargaining in bad faith, there exists not only the possibility, but the temptation, that if negotiations continue to drag on until they approach the commencement of the new school year, there possibly could be, as I have said, some bad faith bargaining * * *.
I find that while the decision of the board to mail out contracts in the form they did suggests less than full compliance with the spirit of chapter 303, Laws of 1968 and particularly Title 34:13A-5.3, there is no alternative but to permit such an action under certain conditions * * *.
But if I grant plaintiff's prayer for a restraint, I believe I am lending the weight of the law to what I seriously believe can be an obstruction of the mandate to the Board of Education to provide a free public school system in Fair Lawn in September.
This decision is in accord with the ruling in Board of Education of Union Beach v. N.J.E.A., 53 N.J. 29 (1968), in which the court held that where government itself undertakes to meet a need, it necessarily decides that the public interest requires the service.
In the instant situation there have been sincere and lengthy collective negotiations since July 19, 1969. As of this date *264 there has been no resolution of the existing impasse between the parties, in spite of the procedures invoked before the Public Employment Relations Commission. Defendants, mindful of the legislative mandate in L. 1968, c. 304, that a study be conducted to enable the State to maintain a competitive position in the recruitment and retention of employees, and in N.J.S.A. 18A:64-1 that a state college system be maintained for the purpose of providing higher education in September to the citizens of this State, may resort to unilateral imposition of salary ranges, under the circumstances at bar, to insure that this governmental purpose is effectively implemented. For all these reasons, the placement of members of the Association on salary ranges in accordance with the recommendations of the Hay Associates Report, under this set of circumstances, does not subvert good-faith collective negotiations within the meaning and spirit of the Employer-Employee Relations Act. Furthermore, aggrieved state employees may appeal to a Hay Appeals Review Board from salary ranges assigned to their class titles with further review by the Civil Service Commission.
Plaintiff's motion for summary judgment to enjoin the implementation of this report is hereby denied. For the reasons set out above, judgment will be entered in favor of defendants.
Plaintiff has also attacked the fact-finding report as void, based on inadequacies. At oral argument it stated that this was a minor issue. However, whether this report is adequate or inadequate is a question of fact to be determined by the proper administrative agency.