The STATE of Delaware et al., Plaintiffs,

v.

AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO LOCAL 1726, DIVISION OF ADULT CORRECTION, et al., Defendants.

Court of Chancery of Delaware, New Castle.

Nov. 3, 1972.

Jerome O. Herlihy, Chief Deputy Atty. Gen., for plaintiffs.

Harvey B. Rubenstein, Wilmington, for defendants.

SHORT, Vice Chancellor:

This is a counterclaim in which the defendant American Federation of State, County and Municipal Employees, AFL–CIO Local 1726, (Federation) seeks to enforce a collective bargaining agreement entered into with the members' employer, the Division of Adult Corrections of the Department of Health and Social Services of the State of Delaware (Department). The parties negotiated and entered into two collective bargaining agreements; the first in 1966 was superceded by the second in 1969. Both agreements provided that the Department would (1) assume the full cost of family coverage of a Blue Cross and Blue Shield health insurance plan, and (2) assume the full cost of a $2,000 life insurance policy for each employee. The Department provided the life insurance as agreed in the 1969 agreement, but has never provided the health insurance called for in both agreements.

The Federation now seeks to enforce that part of the 1969 agreement in which the Department agreed to provide Blue Cross-Blue Shield coverage. The State, representing the Department, replies that that part of the agreement is unenforceable upon several grounds. This is the decision on that question.

At the outset, it is important to recognize that collective bargaining between public employers and public employees is a relatively new phenomenon, and the law defining the rights and duties of the parties under statutes enabling such bargaining is sparse and in the state of development. See Seidman, J., "State Legislation on Collective Bargaining by Public Employees," 22 Lab.L.J. 13 (1971). Intertwined as these questions are with matters of public interest and state sovereignty, many questions may ultimately require resolution by the legislature. For that reason, the holdings in this decision are confined to the narrow questions presented by this particular agreement.

The State first argues that the article in question is unenforceable because it is beyond the scope of collective bargaining allowed by our enabling statute, 19 Del. C. Ch. 13, as limited by our merit system statute, 29 Del.C. Ch. 59. In particular, the State suggests that 29 Del.C. § 5938 limits the scope of subjects which may be included in collective bargaining agreements to those subjects specifically mentioned in Chapter 59; the State says that the subject of health insurance is not included within the several sections of Chapter 59 of Title 29, and may not, therefore, be the subject of collective bargaining. This contention is erroneous.[1] Reference to the session laws makes clear that 29 Del.C. § 5938 was enacted not to define the scope of collective bargaining, but to reconcile the merit system provisions of Title 29, Chapter 59, with the collective bargaining provisions of Title 19, Chapter 13. The title of the act itself

---

1. The difficulty in interpreting 29 Del.C. § 5938 is perhaps understandable. The codified version is not an accurate rendition of the statute as it was originally passed.

In fact, the version which appears in the 1968 Cumulative Supplement to the Delaware Code Annotated is literally meaningless.

is: "An act defining the relationship between Chapter 59, Title 29, Delaware Code, establishing the merit system of personnel administration for the employees of the State and Chapter 13, Title 19, Delaware Code, recognizing the right of public employees to organize . . ." 56 Del.Laws, Ch. 376. The preamble goes on to state that "it is in the public interest to resolve any potentially inharmonious or inconsistent areas in order to insure the appropriate functioning of each statute with due regard to the other . . ." *Id.* And inspection of the literal words of the statute as enacted reveals that its effect is to define when the rules adopted by the State Personnel Commission prevail or, on the other hand, yield to the terms of collective bargaining agreements entered into by public employers. Title 29, Chapter 59, therefore, does not limit the permissible scope of collective bargaining to matters mentioned in that chapter, but rather provides a set of rules to resolve any conflicting provisions which may arise between commission rules and negotiated agreements. The fact that the subject of health insurance is not covered in any of the sections of Ch. 59 is irrelevant to the question of permissible scope of bargaining.

The State also suggests that health insurance, particularly when provided for members of an employee's family, is beyond the scope of bargaining under that particular language of Title 19, Chapter 13, which defines collective bargaining.[2] This question requires construction of the statute. 19 Del.C. § 1301(e) defines "collective bargaining" as including the execution of "a written agreement *with respect to employment relations.*" [Emphasis supplied.] Subsection (c) of the same section defines "employment relations" to mean "matters concerning wages, salaries, hours, vacations,

sick leave, grievance procedures and other terms and conditions of employment." The question, therefore, is whether the matter of health insurance is an "employment relations" matter, either under one of the specific items enumerated in § 1301(c), or under the more general "terms and conditions of employment" part of the definition.

The State argues for a narrow definition of "employment relations." It contends that a health insurance plan, especially when provided for members of the family of State employees, does not fall within any of the specific terms enumerated in § 1301(c) and is not a "term" or "condition" of employment. Therefore, it is suggested, health insurance is not a matter of "employment relations" and is not properly included in a negotiated agreement.

Although the construction of our statute is a novel question here, the same question has been considered by both federal courts and other state courts under similar statutes. The National Labor Relations Act, at 29 U.S.C. § 159(a), contains almost identical language. In construing that act, the United States Court of Appeals for the 1st Circuit held:

". . . We think it can safely be said that the word 'wages' in § 9(a) of the Act embraces within its meaning direct and immediate economic benefits flowing from the employment relationship . . . so construed the word covers a group insurance program for the reason that such a program provides a financial cushion in the event of illness or injury arising outside the scope of employment at less cost than such a cushion could be obtained through contracts of insurance negotiated individually." W. W. Cross & Co. v. N. L. R. B., 174 F.2d 875 (1st Cir., 1949).

2. The question of permissible scope of bargaining under public employer collective bargaining statutes is one of those areas of the law which is in a state of rapid development. See Kilberg, "Appropriate Subjects for Bargaining in Local Government Labor Relations," 30 Md.L. Rev. 179 (1970) ; Wellington and Winter, "The Limits of Collective Bargaining in Public Employment," 78 Yale L.J. 1107 (1969).

The court in *W. W. Cross* held that a group insurance program fell within the meaning of the word "wages" and explicitly passed the question whether such a program could also be included within the scope of the phrase "any conditions of employment." And I see no substantial distinction between group life insurance and group health insurance in the context of "direct and immediate economic benefits flowing from the employment relationship."

The courts of New York, in construing the Taylor Act, Civil Service Law, Section 200 et seq., have arrived at the same result. Thus, in Local 456, International Brotherhood of Teamsters v. Town of Cortlandt, 68 Misc.2d 645, 327 N.Y.S.2d 143 (1971), the court stated:

". . . Medical, dental and life insurance premiums constitute terms or conditions of employment, are in fact a form of present compensation . . . In many areas of employment in today's society, when one speaks of the so-called benefits of employment, one is also referring to medical, dental and life insurance benefits, *not only for the individual employee but also for the members of his family*. This is not a new idea. It is a concept that has been increasingly recognized by all types of employers, both public and private, as an integral part of the employment package and a valuable tool in recruiting and keeping personnel on all levels. It appears that in contracting with plaintiffs to provide a broad range of benefits to its employees, the defendant recognized the importance of these benefits to its employees' total compensation package." [Emphasis added.]

The reasoning in these opinions is persuasive, and without deciding whether appropriately included under "wages" and "salaries" or "other terms and conditions of employment," I find that the subject of health insurance programs for both employees and the members of their families is within the permissible scope of collective bargaining as defined at 19 Del.C. § 1301 (c) and (e).

The State also argues that the legislature, in enacting 29 Del.C. § 5202, evidenced its intent to exclude the subject of health insurance from collective bargaining. I do not agree. Section 5202(a) provides that the State "shall pay the full cost of premium or subscription charges for a basic plan of health care insurance coverage for all regular officers and employees and the eligible pensioners of the State *not otherwise covered under a group health-care insurance contract*." [Emphasis added.] The legislature by the underscored language, recognized the possibility of group health insurance contracts existing outside the terms of Section 5202(a) itself. Nor does Section 5202(c) evidence an intent to exclude families from negotiated health insurance programs, since that section merely deals with the possibility that a husband and wife might both be State employees, and provides that in such a case both may qualify and elect coverage among certain specified options. It has nothing to do with members of the family of a State employee who are not themselves State employees. I therefore find that the legislature in enacting 29 Del.C. § 5202 did not intend to exclude the subject of health insurance programs from the scope of collective bargaining.

Although I have thus concluded that the subject of health insurance is one about which it was appropriate for these parties to bargain collectively, I must yet answer the question of whether, or to what extent, the particular agreement they reached is enforceable.

The Federation points out that the following clause, which appeared in the 1966 agreement, was omitted from the 1969 agreement:

"It is fully agreed and understood by the parties to this agreement that any and all provisions that involve the payment of monies in any form are null and void unless specifically included in the budget for the department in each fiscal year as approved by the Governor and the Gen-

eral Assembly of the State of Delaware."

The Federation argues that elimination of this clause in the 1969 agreement is controlling on the issue of enforceability, because it means in effect that the State waived any conditions precedent to the enforcement of the agreement according to its terms.

In reply, the State points out that both the 1966 and the 1969 agreements contained the following clause:

"It is understood and agreed that if any part of this Agreement is in conflict with mandatory Federal or state laws, that such part shall be suspended and the appropriate mandatory provision shall prevail . . . ."

The State argues that this clause makes omission of the other irrelevant because the Constitution mandates that public funds be spent only when appropriated. Del. Const., Art. VIII, § 6, Del.C.Ann.

 I do not think that the intent of the parties as indicated by their omission or inclusion of these clauses is controlling here. Collective bargaining agreements are not ordinary contracts, 48 Am.Jur.2d, Labor and Labor Relations, § 1204. And this is especially true in the case of those entered into by public employees. As an organic document, a collective bargaining agreement must be considered and interpreted in the broader context in which it arises. The most significant part of that context here is the fact that our constitution forbids the expenditure of public funds without appropriation, and the power to appropriate cannot be delegated. In re Opinion of the Justices, Del.Supr., 4 Storey 366, 177 A.2d 205 (1962); cf. State ex rel. Morford v. Tatnall, Del.Supr., 2 Terry 273, 21 A.2d 185 (1941). Although the statute authorizes and requires public employers to engage in collective bargaining, the legisla-

ture could not in so doing go beyond or waive these constitutional limits upon the power to spend.

 Therefore, at least one limitation upon the collective bargaining statute, and upon any agreement entered into thereunder, is that the State or any of its agencies cannot be bound to the expenditure of funds which have not been properly appropriated. This condition would pertain whether or not the parties formally recognized it by including it in the negotiated agreement.[3]

 On the other hand, the legislature certainly could not have intended that agencies of the State should enter into these agreements and not be bound thereby. As the Federation suggests, such an interpretation would make a mockery and a meaningless exercise of the statute. The prevailing rule at common law is that, absent such a statute, public employees are not entitled to collective bargaining and public employers are without power to enter into such agreements. 48 Am.Jur.2d, Labor and Labor Relations, § 1195; Annot., 31 A.L.R.2d 1142; see Civil Service Employees Association v. Helsby, 21 N.Y.2d 541, 289 N.Y.S.2d 203, 236 N.E.2d 481 (1968). If the legislature had intended that State agencies would not be bound by collective bargaining agreements, it could simply have left the status quo. In any case, it is clear that the scheme of Title 19, Ch. 13 is directed toward the execution of an agreement which settles for a definite time labor relations between the parties. The necessary, logical result must be that a collective bargaining agreement is a binding contract for the period set forth therein, except insofar as it is in conflict with provisions of law or constitution. Compare the definition of "agreement" contained in the Taylor Act, New York Civil Service Law, § 201(12). It follows that although this agreement could not bind the Depart-

3. It is not necessary for purposes of this decision to decide what other limits, if any, are constitutionally imposed upon the scope of collective bargaining.

**368**

ment to the expenditure of funds for health insurance until those funds had been properly appropriated, it could and did bind the Department to do all of those things the agreement contemplated which were within the Department's legitimate powers. The statute commands that the public employer "negotiate in good faith," 19 Del.C. § 1309, and a good faith negotiation implies that the employer will perform those acts within its power necessary to bring about performance of its undertakings. Therefore, the Department may not hide behind a veil of administration inaction drawn across the terms of an otherwise properly negotiated agreement.

It is plain that the Department has not done what it said it would do in the agreement; that is, it has not provided the agreed upon health insurance. It is equally plain that this court is without power to order the expenditure of funds for such insurance without appropriation. However, I am satisfied that the Department is in a position to provide the payment of insurance premiums, in conformity with the constitution, by the simple administrative act of including those payments as a "priority item" in its budget.

I am aware that the decision not to include those premiums as a priority item was based upon an administrative judgment as to what items were required to be so included in order meet the minimum needs of the Department, a decision based upon the exercise of discretion in "trading off" potential priority items. But the Department signed away its discretion when it bound itself to this agreement. It is, therefore, bound to pursue every step within its power to see that the insurance is provided. The time for discretionary "trade-offs" is before and during the bargaining, not after a solemn agreement has been made.

Defendants are, therefore, entitled to an order compelling the Department to include the agreed upon health insurance terms as a priority item in its budget. An appropriate order may be presented on notice.